## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL HOME LOAN              )
MORTGAGE CORPORATION,          )
8200 JONES BRANCH DRIVE        )
McLean, VA  22102              )          Case No. _____
                               )
                    Plaintiff, )
                               )
          v.                   )
                               )
MM PROPERTY LLC,               )
12231 PARKLAWN DRIVE           )
ROCKVILLE, MD  20852           )
                               )
Serve: C T CORPORATION SYSTEM  )
        1015 15TH ST NW         )
        SUITE 1000              )
        WASHINGTON, DC 20005    )
                               )
MM GUARANTY LLC,               )
1209 ORANGE STREET             )
WILMINGTON, DE 19801           )
                               )
Serve: C T CORPORATION SYSTEM  )
        1015 15TH ST NW         )
        SUITE 1000              )
        WASHINGTON, DC 20005    )
                               )
                   Defendants. )
_____)

## COMPLAINT FOR APPOINTMENT OF RECEIVER, PRELIMINARY
## AND PERMANENT INJUNCTIVE RELIEF, AND OTHER RELIEF

Federal Home Loan Mortgage Corporation (hereinafter "Freddie Mac" or the "Plaintiff"),

by and through undersigned counsel, files the instant Complaint against MM Property LLC and

MM Guaranty LLC (hereinafter "Defendants"), seeking the appointment of Marc E. Albert as

receiver (the "Receiver"), and other relief, to avoid continuing harm that MM Property LLC

("Owner"), a defaulting borrower, is causing to a low-income, multi-family property in the

District of Columbia known as Mayfair Mansions III (the "Property").  The Property serves as collateral for the contractual loan obligations of Owner to Freddie Mac.

Freddie Mac is contractually entitled to the immediate appointment of a receiver to take possession of and to maintain and operate the Property pursuant to the terms of the loan documents described below because Owner has defaulted on its payment, performance, and managerial obligations to Freddie Mac and other interested parties.  Those obligations are secured by the Property.  These defaults include Owner failing to provide sufficient property management needed to protect the Property and its residents, including a recent period of several weeks with no property manager at all, which jeopardizes the health and safety of the Property's residents, harms the community, and harms the Property that secures the obligations owed to Freddie Mac.  In support of the requested relief, Freddie Mac states as follows:

## PARTIES

1.      Freddie Mac is a government sponsored enterprise organized and existing under the laws of the United States, with its principal place of business in McLean, Virginia.  Under its federal statutory charter, Freddie Mac has a public mission to provide liquidity, stability, and affordability to the U.S. housing market, including the market for quality, affordable rental housing.  Freddie Mac is operating under the conservatorship of the Federal Housing Finance Agency ("FHFA" or the "Conservator"), which is an independent agency of the United States created in 2008 to supervise certain Government Sponsored Enterprises including Freddie Mac.  *See* 12 U.S.C. § 4511 *et seq*.  Among other powers, Congress granted FHFA authority to place Freddie Mac into conservatorship under certain, statutorily defined conditions, which FHFA did in 2008.  As Conservator, FHFA has broad statutory powers, including the powers to preserve and conserve Freddie Mac's assets and property, and to collect obligations due Freddie Mac.

FHFA's ability to exercise its statutory powers and functions as Conservator is protected by federal law. *See*, *e.g.*, 12 U.S.C. § 4617(f).

2.      Defendant MM Property LLC is a District of Columbia limited liability company that owns the Property, a multifamily residential property with an address of 3743-3817 Jay Street NE, Washington, D.C.  The Property is the subject of the instant case.

3.      Defendant MM Guaranty LLC (hereinafter "Guarantor") is a Delaware limited liability company that guaranteed payment and performance under the Reimbursement Agreement, as defined *infra*, ¶ 15.  Those contracts, and others identified below, form the basis for the claims that Freddie Mac alleges.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 12 U.S.C. § 1452(f) and 28 U.S.C. § 1345.

5.      This Court has personal jurisdiction over the parties to this action pursuant to D.C. Code §§ 13-423(a)(1) and 13-423(a)(1).

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the real property that is the subject of this receivership proceeding is located in the District of Columbia which is within the jurisdiction of this Court, and because the parties consented to venue in this Court in Section 30 of the Reimbursement Deed of Trust.

## FACTS

A.      **The Subject Property.**

7.      Owner owns the Property, which includes 160 apartment units, parking, and related amenities.

**B.      The Bond Loan And Bond Mortgage.**

8.      The District of Columbia Housing Finance Agency ("DCHFA") issued its Multifamily Housing Revenue Bonds (Mayfair Mansions III Project) ("Bonds") to provide financing to Owner for the Property, as evidenced by the Eleventh Supplemental Indenture dated October 1, 2011 ("Indenture") between DCHFA as Issuer and U.S. Bank, National Association as Trustee ("U.S. Bank" or "Trustee").  A true and accurate copy of the Indenture is attached hereto as Exhibit 1.

9.      Owner executed in favor of DCHFA a Bond Mortgage Note dated as of October 1, 2011 in the original principal amount of $11,000,000.00 in which Owner promised, *inter alia*, to pay to the order of DCHFA the sum advanced together with all accrued interest ("Bond Loan").  A true and accurate copy of the Bond Mortgage Note, evidencing the Bond Loan, is attached hereto as Exhibit 2 ("Bond Note").

10.      The Bond Note is secured by a Multifamily Deed of Trust, Assignment of Rents and Security Agreement (Bonds) for the Property dated as of October 1, 2011 and recorded among the land records of Washington, D.C. as Instrument No. 201108389, made by Owner in favor of DCHFA ("Bond Deed of Trust").  The Bond Deed of Trust conveys the Property – together with all buildings, improvements, fixtures, personal property included in the Property, leases, licenses, and occupancy agreements, among other items – as security for the Bond Note. A true and accurate copy of the Bond Deed of Trust is attached hereto as Exhibit 3.

11.      DCHFA executed an assignment, on or about October 1, 2011, by which DCHFA assigned the Bond Note to Trustee ("Bond Assignment").  A true and accurate copy of the Bond Assignment is attached as page 6 to the Bond Note which in turn is attached hereto as Exhibit 2.

Pursuant to the Indenture, Issuer assigned to Trustee the Bond Note and the Bond Deed of Trust. (Ex. 1 at 28.)

12.     Wells Fargo Bank, National Association ("Servicer") is the servicer for the Bond Loan.

13.     The Indenture, the Bond Note, the Bond Deed of Trust, and the Bond Assignment, are hereinafter collectively referred to as the "Bond Loan Documents."

**C.     The Reimbursement And Security Agreement And Reimbursement Mortgage.**

14.     At the request of Owner, Freddie Mac executed a Credit Enhancement Agreement with Trustee dated as of October 1, 2011 ("Credit Enhancement Agreement") to provide credit enhancement for the Bond Loan by making the payments of principal and interest on the Bonds to the Trustee upon the terms set forth in the Credit Enhancement Agreement.  A true and accurate copy of the Credit Enhancement Agreement is attached hereto as Exhibit 4.

15.     To evidence Owner's reimbursement obligations to Freddie Mac as a result of payments made by Freddie Mac under the Credit Enhancement Agreement, Freddie Mac and Owner executed a Reimbursement and Security Agreement dated as of October 1, 2011 ("Reimbursement Agreement"), in which Owner agreed to reimburse Freddie Mac for payments made by Freddie Mac under the Credit Enhancement Agreement, and other obligations of Owner under the Reimbursement Agreement.  A true and accurate copy of the Reimbursement Agreement is attached hereto as Exhibit 5.

16.     The Reimbursement Agreement is secured by a Multifamily Deed of Trust, Assignment of Rents and Security Agreement dated October 1, 2011 and recorded among the land records of Washington, D.C. as Instrument No. 2011108390 ("Reimbursement Deed of Trust").  The Reimbursement Deed of Trust conveys the Property together with all buildings,

improvements, fixtures, personal property included in the Property, leases, licenses, and occupancy agreements, among other things, as security for the Reimbursement Agreement. A true and accurate copy of the Reimbursement Deed of Trust is attached hereto as Exhibit 6. The documents evidencing the obligations of Owner to Freddie Mac pursuant to the Reimbursement Agreement together with the Reimbursement Guaranty (defined below) are referred to herein as the "Reimbursement Loan Documents." Freddie Mac is the beneficiary under the Reimbursement Deed of Trust and therefore has a security interest in the Property. As Conservator, FHFA has an interest in all of Freddie Mac's property. 12 U.S.C. § 4617(b)(2)(A). As Conservator, FHFA therefore has the federally protected power to preserve and conserve Freddie Mac's interest in the Property. *See* 12 U.S.C. §§ 4617(b)(2)(B), 4617(f).

17. Guarantor executed a guaranty ("Reimbursement Guaranty"), thereby guarantying to Freddie Mac all of the payment and performance obligations of Owner in connection with the Reimbursement Agreement. A true and accurate copy of the Reimbursement Guaranty is attached hereto as Exhibit 7.

18. DCHFA, Trustee, Freddie Mac, and Servicer are parties to an Intercreditor Agreement dated as of October 1, 2011 and recorded among the land records of Washington, D.C. on October 27, 2011 as Instrument No. 2011108402 (hereinafter the "Intercreditor Agreement"), relating to the respective rights of the parties thereto with respect to the Bond Loan Documents and the Reimbursement Loan Documents. Pursuant to the Intercreditor Agreement, upon a default under the Bond Loan Documents or the Reimbursement Loan Documents, Freddie Mac has the right and authority to take or direct any available rights and remedies under

either the Bond Loan Documents or the Reimbursement Loan Documents.[1]   A true and correct copy of the Intercreditor Agreement is attached hereto as Exhibit 8.

**D.     Defendants' Defaults.**

19.     By a Notice of Default dated August 29, 2022 ("DHCD Default Notice"), the D.C. Department of Housing and Community Development ("DHCD") notified Owner that Owner had defaulted on a $8,250,000.00 loan held by DHCD (the "DHCD Loan") which is secured by a deed of trust encumbering the Property and which is a junior interest to the liens created by the Bond Deed of Trust and the Reimbursement Deed of Trust.  A true and accurate copy of the DHCD Default Notice is attached hereto as Exhibit 9.  In the DHCD Default Notice, DHCD notified Owner of the following defaults:

1.     Borrower[2] has violated Section 6(e)(1) of the Loan Agreement and Section 8 of the Covenant in that ***Borrower has not submitted to the Lender*** within thirty (30) days after each anniversary of the Placed in Service Date: (i) ***the prior year's audited financial statements for the Borrower.*** DHCD's standard practice is to accept financial statements through April 30th following the close of the prior calendar year. Therefore, Borrower has until April 30th of each year to meet the reporting requirements for the previous year. ***Borrower has failed to do so for the last 2 years.***

2.     Borrower has violated Section 6(f) of the Loan Agreement and Section 4 of the Deed of Trust, in that ***Borrower has not paid all charges for labor and supplies and other obligations relating to the Property*** when due and invoiced by vendors hired to provide such services and supplies to the Property.

3.     Borrower has violated Section 8 of the Deed of Trust and Section 10 of the Covenant in that ***Borrower has not maintained the Property and kept it in good repair and in "habitable condition in compliance with all DC building codes,"*** specifically: (i) ***Borrower has allowed the Property to deteriorate by not maintaining and repairing common areas and rental units to habitable conditions*** and, (ii) Borrower has allowed 4 rental units

---

[1]   Certain provisions of the Bond Loan Documents and the Reimbursement Loan Documents refer to Owner as "Borrower" and refer to the payee thereunder and the party secured by the Bond Deed of Trust and/or Reimbursement Deed of Trust as "Lender."
[2]   The DHCD Default Notice defines Defendant MM Property LLC as "Borrower."

> to remain vacant, in disrepair and uninhabitable for an extended period of time. Attached are Inspection Results outlining the findings from inspections performed on December 14, 2021 and June 6, 2022. Lender hereby demands that Borrower repair and resolve all of the items listed above.

(Ex. 9 (emphasis added).)

20.     By a letter dated September 6, 2022, Freddie Mac notified both Owner and Guarantor that Owner was in default of its obligations under the Reimbursement Loan Documents citing, among other defaults, certain of the violations identified in the DHCD Default Notice, which also constitute defaults under the Reimbursement Loan Documents ("September 6, 2022 Letter").  A true and accurate copy of the September 6, 2022 Letter is attached hereto as Exhibit 10.  In the September 6, 2022 Letter, Freddie Mac notified Defendants of defaults under the provisions of the Reimbursement Loan Documents involving (i) the improper, and unremedied, dissolution of one of Owner's constituent entities, (ii) the repeated failure of Owner to provide financial statements, and (iii) poor and unsafe conditions at the Property and related violations of the DC Building Code:

> First, On January 6, 2017, **Triton Realty Holdings LLC, which had been the managing member of Borrower's[3] managing member, was dissolved** as a Maryland limited liability company. That dissolution constituted a prohibited transfer, per Section 21 (e)(iv), 21(e)(viii), & 22(f) of the Loan Agreement. Accordingly, an Event of Default occurred, and has been continuing, since January 6, 2017, despite repeated attempts by Lender to resolve that default.
>
> Second, we understand that, despite repeated requests, **Borrower has failed to provide certified or audited financial statements for the Property for either 2021 or 2022** . . . . [F]inally, **Borrower has failed to properly maintain the Property**, which has led to several violations of various municipal laws and regulations, as reflected in, and attached to, an August 29, 2022 default letter issued to Borrower by the Government of the District of Columbia. Each of the violations noted in this paragraph will, if unremedied within 30 days, constitute additional Events of Default pursuant to the Loan Agreement.

---

[3]  The September 6, 2022 Letter from Freddie Mac defines Defendant MM Property LLC as "Borrower," Freddie Mac as "Lender" and the Reimbursement Deed of Trust as the "Loan Agreement."

(Ex. 10 (emphasis added).)

21.     The conditions at the Property have substantially deteriorated since the September 6, 2022 Letter.  The Property lacked on-site management and security for at least several weeks after the prior property manager terminated its contract with Owner on March 28, 2023, the Property has not been maintained, and the Property's tenants are at risk.  (*See generally*, Ex. 11, Affidavit of Officer Dyer.)  The Affidavit of Officer Brayden Dyer describing these conditions is attached hereto as Exhibit 11.

22.     Specifically, Metropolitan Police Department ("MPD") Officers inspected the Property on April 13, 2023 and April 14, 2023 and reported serious risks to the Property and to the Property's tenants, including that (1) none of the front or rear exterior doors to the buildings could be locked and that, as a result, any one from the public could freely access the interior common areas of the buildings, (2) no security, property management or maintenance personnel were on site, (3) basic and necessary property maintenance was not being performed, and (4) outdoor lighting was minimal, which presented a risk for residents at night.  (*Id.*)

23.     By a letter dated April 6, 2023 (the "Termination Notice"), WF Affordable Housing LLC f/k/a Wells Fargo Affordable Housing Community Corporation notified MM Assets LLC ("Managing Member"), the entity managing Owner, of its intention to exercise its right to remove Managing Member after the requirements of the D.C. Tenant Opportunity to Purchase Act ("TOPA") have been satisfied because of Managing Member's defaults, which includes those identified in the DHCD Default Notice and the September 6, 2022 Letter.  (*See* Ex. 12, Termination Notice.)  Upon information and belief, this can be a several month process and the time it would take to identify a replacement managing member is unknown.  A true and accurate copy of the Termination Notice is attached hereto as Exhibit 12.

24.     On Tuesday, May 2, 2023, a representative of Freddie Mac visited the Property to assess current conditions.  (*See* Ex. 13, Declaration of Demetrios Morakis.)  On arrival, the representative learned Owner hired MPD officers on an off-duty basis to provide security services at the Property daily from 10:00 a.m. to 2:00 a.m.  (*See id.* ¶ 6.)  The on-site officer at that time accompanied the Freddie Mac representative to the leasing office where a woman named "Shawn" identified herself as an employee of Owner and informed him that she was hired on Tuesday, April 25, 2023, she was not affiliated with or employed by a property management company, and she was the only employee working at the Property.  (*See id.* ¶ 7.)  The Declaration of Demetrios Morakis describing this site visit and his observations is attached hereto as Exhibit 13.

25.     During the May 2nd inspection, Freddie Mac's representative observed there were several doors within the leasing office to which Shawn had no access because they were locked, and she did not have keys.  (*See id.* ¶ 8.)  Shawn also said she was still trying to figure out how the computer system in the office worked and expressed difficulty accessing all necessary records.  (*See id.*)  There were also no maintenance employees on site.  (*See id.* ¶ 9.)  The employee stated that she had begun reaching out to tenants about repair requests and was working on hiring subcontractors to do repairs.  (*See id.*)

26.     Given the uncertainty of the availability of maintenance contractors and access to parts and equipment necessary to respond to tenant maintenance requests, it is apparent that tenants have not been receiving timely maintenance in their units.  Further, it is not reasonable to expect the delayed maintenance to be cured any time soon given the lack of a qualified property manager on site for many weeks and lack of any full time, on-site maintenance employees for a prolonged period of time.

27.     Also, during the May 2nd inspection, the Freddie Mac representative examined the front and rear exterior doors of each building at the Property.  (*See id.* ¶ 12.)  Each of the front doors was unlocked, and although locks were in the process of being installed by a contractor, the locking mechanisms were being held down by heavy tape such that the doors would not latch closed when shut, and thus all front doors remained accessible to the public as had been previously reported to Freddie Mac by MPD Officers Frantz Fulcher and Brayden Dyer (*See id.* ¶ 12.)  Any person could remove the tape such that the doors could close, latch, could potentially lock out tenants, and could allow bad actors to gain easy access to the Property (*See id.*)  According to Shawn, a contractor was scheduled to re-key each of the doors on Thursday, May 4th, but the doors would not be locking until Saturday, May 6th, at which time she expected to distribute new access keys to the tenants.  (*See id.*)

28.     Owner did not seek Freddie Mac's prior approval to hire the new employee as a property management solution prior to her apparent hire date, as required by Section 17(e) of the Reimbursement Deed of Trust.  (*See* Ex. 6 § 17(e).)  Freddie Mac knows nothing about her background, experience, qualifications or whether Owner had her undergo a security background check.  Freddie Mac has not and does not approve of this new employee as an adequate property management solution for the Property.

29.     By letter dated November 15, 2022, Freddie Mac notified Trustee that an Event of Default had occurred under the Bond Deed of Trust, and Freddie Mac directed Trustee to issue a notice to Owner accelerating the entire unpaid principal of and all other amounts due under the Bond Note.  A true and accurate copy of the November 15, 2022 letter is attached hereto as Exhibit 14.

30.     By a letter dated December 21, 2022 ("Acceleration Notice"), Trustee delivered a letter to Owner and Guarantor notifying them that an Event of Default had occurred under the Bond Deed of Trust.  A true and accurate copy of the Acceleration Notice is attached hereto as Exhibit 15.

31.     The Acceleration Notice notified Owner and Guarantor that, because of Owner's defaults, the Trustee accelerated all of the principal and accrued interest and other sums due under the Bond Note and declared such sums to be immediately due and payable.  (*See* Ex. 15 at 2.)

32.     In the Acceleration Notice, Trustee demanded that Owner pay the Bond Loan in full and turn over to Servicer all rents and property funds.  (*Id.*)

33.     Upon information and belief, despite notice, acceleration, and demand, Owner and Guarantor have failed to pay the amount due on the Bond Loan and has failed to turn over the rents and property funds and remains in default under the terms of the Bond Loan Documents and the Reimbursement Loan Documents.

34.     As of May 1, 2023, Owner owed $11,358,645.50 on account of the indebtedness under the Bond Loan (the "Indebtedness"), which sum includes unpaid principal, interest, costs and fees.  A Statement of Account produced by Servicer is attached hereto as Exhibit 16.

35.     Additional interest will continue to accrue on the unpaid principal balance of the indebtedness under the Bond Loan at the rate of 11.5% per annum.  Freddie Mac has incurred and will continue to incur additional costs, expenses and fees, including attorneys' fees, which are recoverable under the Article 12 of the Bond Deed of Trust and the Article 12 of the Reimbursement Deed of Trust.

36.     Section 3 of the Intercreditor Agreement and Section 22 of the Reimbursement Deed of Trust provide that a default under the Bond Loan Documents constitutes a default under the Reimbursement Agreement.  (*See* Ex. 8 at 5 and Ex. 6 at 33.)  Accordingly, an Event of Default has also occurred, and is continuing, under Section 6.1(iv) of the Reimbursement Agreement.

37.     By a letter dated February 7, 2023, Freddie Mac notified Defendants that, *inter alia*, Owner remained in default because it had failed to comply with the Acceleration Notice (the "February 7, 2023 Letter").  A true and accurate copy of the February 7, 2023 Letter is attached hereto as Exhibit 17.

38.     By Notice of Default dated April 20, 2023 (the "Bond Default Letter"), Trustee notified Owner that it had defaulted on its obligations under the Bond Loan Documents by failing to provide: (i) No Default Certificates for the years 2021 and 2022, (ii) IRS Form 8703 for the years 2021 and 2022, (iii) Quarterly Certificates of Compliance for the fourth quarter of 2021 through the fourth quarter of 2022, and (iv) Annual Certificates of Compliance for the years 2021 and 2022.   A true and accurate copy of the Bond Default Letter is attached hereto as Exhibit 18.

39.     Owner remains in default on certain of its monetary and non-monetary obligations set forth in the DHCD Default Notice, in the September 6, 2022 Letter, and in the Bond Default Letter including defaults which are identified above and which placed both the Property's tenants and the Property at risk.  Moreover, following issuance of the September 6, 2022 Letter, Owner defaulted on numerous additional non-monetary obligations, including the following:  *First*, the property management company that managed the Property resigned effective as of March 28, 2023 and, since that time, Owner has failed to hire a new property management company

approved by Freddie Mac, leaving the management offices at the Property shuttered for several weeks and now staffing it with one new person apparently employed directly by Owner, that is not affiliated with a reputable or approved property management company.  (*See* Ex. 11 ¶ 6; Ex. 13 ¶ 7, 11.)  *Second*, upon information and belief, there has been no maintenance on site, and repair requests have gone unanswered for weeks, including reports of non-functioning toilets and showers.  (*See* Ex. 11, at ¶ 6.)  *Third*, the Property lacked adequate security for at least several weeks, as the buildings on the Property lacked exterior door locks.  (*Id.*; Ex. 13 ¶ 12.)  *Fourth*, Owner has defaulted on its obligation to pay significant Property expenses owing its vendors, including maintenance charges and water bills, and it has failed to pay fines and penalties assessed by the District of Columbia Department of Buildings, Office of Civil Infractions, totaling more than $705,000 for which involuntary liens have been filed against the Property.[4] (*See* Ex. 6, § 22(h); Ex. 19.)  True and correct copies of the involuntary liens recorded on the property in 2023 as of April 2023 are attached hereto as Exhibit 19.

40.     As of May 1, 2023, Owner owed $8,250,000.00 on account of the indebtedness under the DHCD Loan.  The Declaration of Genee Hayes identifying the outstanding amount due under the DHCD Loan is attached hereto as Exhibit 20.

41.     Based on a broker opinion of value from Transwestern, as of May 8, 2023, the Property would trade between $16 million to $18 million.  (Ex. 13 ¶ 16.)  Transwestern arrived at this range by reviewing the FY 2021 income statement and March 2023 rent roll for the

---

[4]  Involuntary liens recorded in 2023 include a mechanic's lien recorded by Tempo, Inc. on March 31, 2023 in the amount of $520,403.39, liens for unpaid water bills in the amounts of $54,722.94 (recorded in February 2023), and $15,948.22, $16,182.85, $19,604.21, $22,927.14, and $31,401.69 (recorded March 2023), and four liens recorded respectively by the District of Columbia Department of Buildings, Office of Civil Infractions, on April 7, 2023 in the amounts of $4,767.00, $6,285.00 and $3,180.00 and on April 12, 2023 in the amount of $11,625.00, for Owner's failure to pay fines and penalties assessed pursuant to the Civil Infractions Act of 1985. (Ex. 19.)

Property, recent comparable sales, and their market experience with similar properties located in Washington, D.C.  (*Id.*)

42.     Under the terms of the Bond Note, payment of the Bond Loan is a non-recourse obligation of the Owner, and Freddie Mac's "only recourse for the satisfaction" of the Bond Loan, is "the exercise of its rights and remedies" with respect to the Property.  (*See* Ex. 2, § 8.)

43.     The outstanding amounts due on the Bond Loan and the DHCD Loan, which are secured by liens on the Property, and other liens which encumber the Property, totaling $20,313,645.50 (*see supra* ¶¶ 33, 38-39), are greater than the current fair market value of the Property (*see supra* ¶ 41.)

### COUNT I
**(Breach Of Contract Against Owner)**

44.     Freddie Mac hereby incorporates by reference all of the foregoing allegations of the instant Complaint as though fully set forth herein.

45.     Owner's failure to pay in full the Bond Note and to turn over all of the Property's rents and funds constitute continuing Events of Default under the Bond Loan Documents and the Reimbursement Loan Documents.

46.     The Trustee provided Owner with timely notice of the Events of Default, properly accelerated the Bond Note, and made proper demand for immediate payment of the outstanding balance due on the Bond Note and for turnover of the Property's rents and funds.

47.     Despite written notice, acceleration, and demand, Owner has failed and refused to pay the amounts due under the terms of the Bond Loan Documents or to turn over all of the Property's rents and funds.

48.     Owner has also failed and refused to cure significant, non-monetary defaults, including to manage and maintain the Property and to provide adequate security for the Property, thereby placing the Property and its tenants at serious risk.

49.     Owner's breach of the Bond Loan Documents constitutes an Event of Default under the Reimbursement Agreement that has caused and continues to cause substantial damages to Freddie Mac.

WHEREFORE, Plaintiff Freddie Mac demands judgment against Owner for breach of the Reimbursement Agreement in an amount equal to the damages caused by Owner's breach.

## COUNT II
### (Appointment Of Receiver Against Owner)

50.     Freddie Mac hereby incorporates by reference the allegations of the instant Complaint as though fully set forth herein.

51.     In Section 3(d) of the Reimbursement Deed of Trust, Owner as grantor thereunder expressly authorized and consented to the appointment of a receiver following an Event of Default:

> [I]f an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's[5] solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. ***If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte if permitted by applicable law.***

(Ex. 6, at 10 (emphasis added).)

---

[5]  The Reimbursement Deed of Trust defines Defendant MM Property LLC as "Borrower."

52.     In Section 3(d) of the Reimbursement Deed of Trust, Owner further agreed that, following an Event of Default, Owner would (i) surrender possession of the Property to a receiver and (ii) cooperate fully with the receiver's efforts to take control of the property:

> Immediately upon appointment of a receiver . . . Borrower shall surrender possession of the Mortgaged Property to . . . the receiver . . . and shall deliver to . . . the receiver . . . all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property and all security deposits and prepaid Rents.

(*Id.*)

53.     Because Owner consented to the appointment of a receiver following an Event of Default, and because Events of Default have occurred and remain uncured, Plaintiff respectfully requests that the Court appoint a receiver for the Property.

54.     In addition to Freddie Mac's contractual right to the appointment of a receiver under the Reimbursement Deed of Trust based on Borrower's agreed-to consent, such relief is appropriate under the Court's equitable jurisdiction given (i) the present and ongoing dangers that residents faced, (ii) the imminent danger of the Property being lost, injured, diminished in value, destroyed, squandered, or wasted, and (iii) Owner's failure to account for or turn over all Property rents and funds.

55.     As described in the accompanying Motion for Appointment of Receiver, Entry of Preliminary Injunction, and Permanent Injunction (the "Motion"), a receivership is necessary and desirable to preserve the Property and protect it against damage, loss, or destruction, and protect the safety of the Property's residents.  Likewise, a receivership is needed to account properly for, and collect, the rents, revenues, and profits generated by the Property, which monies have been assigned to the Trustee under the Bond Loan Documents and to Freddie Mac under the Reimbursement Loan Documents.

56.     Upon information and belief, the net rental income and the property funds are not being accounted for and are not being used to meet Owner's payment obligations under the Bond Loan Documents.

57.     Servicer has repeatedly requested an accounting of the Property's rental income, rent rolls, and other relevant financial information concerning the Property.  However, Owner has failed to provide the required accounting and financial information.

58.     A receivership is necessary because the Property's residents face a continuing and significant risk of harm given the Property's lack of adequate security, and the prolonged absence of an on-site property manager accompanied by deteriorating conditions at the Property.

59.     FHFA has advised Freddie Mac that FHFA supports the appointment of the Receiver on the terms set forth in the proposed Order accompanying the Motion, and that FHFA reserves its rights as to any other or different terms for the appointment of a Receiver.

WHEREFORE, Plaintiff Freddie Mac demands judgment against Owner and the entry of an order:

A.     Appointing the Receiver for the Property consistent with Freddie Mac's Motion and the terms of the proposed Order, filed contemporaneously herewith; and

B.     Granting such other and further relief as the Court deems just and appropriate.

## COUNT III
### (Accounting Against Owner)

60.     Freddie Mac hereby incorporates by reference all of the foregoing allegations of the instant Complaint as though fully set forth herein.

61.     Owner is under a legal obligation to pay to the Servicer the rents collected in connection with operating the Property.

62.     Upon information and belief, the records of the rents are known and kept exclusively by Owner or its agent and are not being accounted for properly and have not been turned over to the Servicer.

63.     Servicer has repeatedly requested information and an accounting of the rents paid in connection with the Property, but Owner has not provided all information requested by Servicer to which it is entitled.

64.     Pursuant to Section 14 of the Reimbursement Deed of Trust, Owner is required to furnish to Freddie Mac, in a format certified by Owner, complete and accurate periodic statements of income and expenses for the Property and other information, including a rent schedule and accounting of security deposits, and Owner is required to permit Freddie Mac to examine and inspect the books, records, contracts and leases for the Property.

65.     Despite repeated requests to do so, Owner has failed to furnish to Freddie Mac the required statements and has failed to permit Freddie Mac to inspect the books and records for the Property.

66.     Freddie Mac requests an order requiring Owner to provide the required reports to Freddie Mac and permitting Freddie Mac to inspect the books and records for the Property.

WHEREFORE, Plaintiff Freddie Mac demands judgment against Owner and the entry of an order:

A.     Ordering full and complete accounting of all rents, profits, sums, amounts, or compensation received or due and payable in connection with the Property from the date of the last report until the present time;

B.     Ordering full and complete accounting of all written or recorded financial transactions conducted in connection with the Property from the date of the last

report until the present time, including, but not limited to, disclosure of all financial and accounting records, bank accounts, accounts receivable and accounts payable, federal and state tax returns, real and personal property tax documents, and all other financial information in the possession, custody, or control of Defendants that relates to or pertains to the Property;

C.    Entering judgment against Owner in the amount found to be due together with all costs, attorneys' fees, interest, and other relief; and

D.    Granting such other and further relief as this Court deems just and appropriate.

### COUNT IV
**(Breach Of Contract – Guarantor)**

67.    Freddie Mac hereby incorporates by reference all of the foregoing allegations of the instant Complaint as though fully set forth herein.

68.    Guarantor is liable under the Reimbursement Guaranty for all damages that Freddie Mac incurs because of Owner's default under the Reimbursement Agreement and Owner's failure to turn over all of the Property's rents.

69.    The Trustee provided Owner and Guarantor with timely notice of the Events of Default, properly accelerated the Bond Note, and made proper demand for immediate turnover of rents and property funds.

70.    Guarantor failed and refused to comply with its obligations under the Reimbursement Guaranty.

WHEREFORE, Plaintiff Freddie Mac demands judgment against Guarantor for breach of the Reimbursement Guaranty in an amount equal to the damages caused by Guarantor's breach.

## COUNT IV
### (Preliminary And Permanent Injunctive Relief)

71.     Freddie Mac hereby incorporates by reference all of the foregoing allegations of the instant Complaint as though fully set forth herein.

72.     Freddie Mac seeks and is entitled to preliminary and permanent injunction ordering Defendants to turn over and release to the Receiver all records relating to the Property, including all contracts, agreements, permits, licenses, drawings, specifications and other items relating to the Property and other relief as set forth in the proposed Order Freddie Mac filed in connection with its Motion.

73.     Freddie Mac further seeks an order enjoining Defendants from interfering with its rights under the Bond Deed of Trust, and from interfering with any receiver appointed by the Court.

74.     Freddie Mac will suffer irreparable harm in that, in the absence of an injunction, the Property could be squandered, and its rents may be used for purposes other than Owner's payment obligations under the Bond Loan Documents.   Further, Owner's history of mismanagement of the property, non-monetary defaults, and history of neglecting the Property, has left Freddie Mac with no assurance that Owner will fulfill its obligations under the Bond Loan Documents.

75.     The issuance of the relief requested will not cause undue inconvenience or hardship to the Defendants.

76.     Freddie Mac lacks an adequate remedy at law.

77.     The requested relief is in the public interest.

21

WHEREFORE, Plaintiff Freddie Mac demands entry of preliminary and permanent injunctions appointing the Receiver and granting other such relief as set forth in the proposed Order accompanying the Motion.

Dated: June 7, 2023                          Respectfully submitted,

*/s/ Cathy A. Hinger*
Cathy A. Hinger (DC Bar No. 473697)
Jeffrey Tarkenton (DC Bar No. 376493)
Kathleen O. Gallagher (DC Bar No. 1006302)
Christos Christodoulou (DC Bar No. 1671631)
Womble Bond Dickinson (US) LLP
2001 K Street, NW, Suite 400 South
Washington, DC  20006
Tel: (202) 857-4489
Fax: (202) 261-0029
Email:  cathy.hinger@wbd-us.com
Email:  jeffrey.tarkenton@wbd-us.com
Email:  katie.gallagher@wbd-us.com
Email:  christos.christodoulou@wbd-us.com

*Counsel for Plaintiff Federal Home Loan Mortgage Corporation*

### **CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2023, I caused a true and accurate copy of the foregoing Complaint for Appointment of Receiver, Preliminary and Permanent Injunctive Relief and Other Relief and all Exhibits thereto to be served by electronic mail and by hand delivery via courier on the following:

Leslie Paul Machado
O'Hagan Meyer
2560 Huntington Avenue, Suite 202
Alexandria, VA  22303
LMachado@ohaganmeyer.com

*Counsel for Defendants*

*/s/ Cathy A. Hinger*
Cathy A. Hinger