IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL HOME LOAN ) <br> MORTGAGE CORPORATION ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MM PROPERTY LLC, *et al*. ) <br> ) <br> Defendants. ) <br> ) | Case No. 1:23-cv-01642 <br><br> Judge Carl John Nichols |

**RECEIVER'S MOTION FOR ENTRY OF AN ORDER HOLDING MM GUARANTY LLC AND SCOTT FORRESTER IN CONTEMPT AND PROVIDING LEAVE FOR WELLS FARGO AFFORDABLE HOUSING COMMUNITY DEVELOPMENT CORPORATION TO INTERPLEAD OR TURN OVER FUNDS TO THE RECEIVER**

Marc E. Albert, Receiver (the "Receiver") by and through his undersigned counsel, respectfully moves (the "Motion") for the entry of an order holding MM Guaranty LLC ("MMG") and Scott Forrester ("Forrester") in contempt and imposing sanctions for their failure to comply with the Court's December 12, 2023 Order. That order compelled MMG and Forrester to provide Wells Fargo Affordable Housing Community Development Corporation ("WFAH") with their consent to turn over cash collateral account funds to the Receiver. The Receiver also seeks entry of an order granting WFAH leave to provide the funds they are holding to the Receiver or interplead the funds with the Court. In support, the Receiver states as follows:

The Receivership Case

1.     This case was commenced on June 7, 2023 by the filing of a Complaint by Federal Home Loan Mortgage Corporation ("Freddie Mac" or the "Plaintiff") against the Defendants, MM Property LLC and MM Guaranty LLC (the "Defendants"). Forrester is a

1

Principal of MM Property LLC, and MMG [Dkt. No. 28 at 1], and the Defendants' authorized representative, [Dkt. No. 29 at 2, ¶2].

2. Freddie Mac filed its complaint, alleging a need "to avoid continuing harm that MM Property LLC ('Owner'), a defaulting borrower, is causing to a low-income, multi-family property in the District of Columbia known as Mayfair Mansions III (the 'Property')." [Dkt. No. 1 at 1–2]. Plaintiff asserts the Property serves as collateral for a contractual loan obligation owed by the Owner to Freddie Mac. [Dkt. No. 1 at 2].

3. The Property is a 160-unit garden-style apartment complex located at 3743-3817 Jay Street NE, Washington, D.C. [Dkt. No. 3 at 1].

4. Simultaneously with the filing of the Complaint, Plaintiff filed a *Motion for Appointment of Receiver, Entry of Preliminary Injunction and Permanent Injunction*, which among other relief, sought the appointment of Marc E. Albert as receiver. [Dkt. No. 3 at 4].

5. On June 30, 2023, the Court entered a *Consent Order* [Dkt. No. 21], endorsed by Freddie Mac and the Defendants. Under the Consent Order, Marc Albert was appointed as Receiver to take control of and manage the Property.

6. Decretal Paragraph 5 of the Consent Order imposed certain requirements to cooperate with the Receiver. [Dkt. No. 21 at 9–10, ¶5].

7. In relevant part, that Paragraph of the Consent Order provided:

The Owner and its respective agents, members, officers, employees, attorneys, affiliates, and all persons with control or possession of any portion of the Property or the Receivership Estate (collectively "Owner Parties") shall reasonably and diligently cooperate with the Receiver in the turnover to Receiver of the Property and the Receivership Estate, in the Receiver's possession and operation of the Property and the Receivership Estate, the receipt by the Receiver of Rents, Funds, Security Deposits, and Accounts from or with respect to the Property, and in the Receiver performing the duties and exercising the power and authority of the Receiver under this Order. Owner and all such parties holding property of the Receivership Estate on behalf of Owner are hereby enjoined and restrained from

>   interfering with or hindering the Receiver in carrying out and performing the duties of the Receiver under this Order.

[Dkt. No. 21 at 10].

8. Counsel for Wells Fargo Affordable Housing Community Development Corporation ("WFAH") has advised the Receiver that a sum of approximately $887,000 remains in a Cash Collateral Account (the "Cash Collateral Account") established pursuant to a guaranty (the "Guaranty") executed on October 1, 2011 between WFAH and MM Guaranty LLC.

9. The Guaranty was established for the benefit of MM Property LLC, MM Guaranty LLC, and WFAH. The purpose of the agreement was to induce WFAH to invest by securing the obligations of MM Guaranty LLC and establishing a fund to be available to ensure compliance by the Owner with its duties and obligations related to the Property.

<u>The Receiver's Need for Funding and Pleadings Filed Regarding the Cash Collateral Account</u>.

10. To stabilize the Property, the Receiver is in need of significant funding in order to rehabilitate the large amount of vacant units at the Property and pay for the current monthly operating expenses while it is under receivership.

11. The Receiver has obtained the release of certain funds of approximately $216,000 held in a separate. Replacement Reserve maintained by the Property's mortgage servicer, Wells Fargo Bank. However, the Receiver has expended the vast majority of these funds to address the expenses and maintenance needs of the Property.

12. The Property is continuing to run at a significant deficit and without the turnover of funds from the Cash Collateral Account, the Receiver will lack sufficient funding to bring the Property to a healthier operational status.

13. Accordingly, the Receiver sought authorization for the release of the Cash Collateral Funds.

14. WFAH as Investor Member has consented to the Receiver's use of the funds in the Cash Collateral Account. However, under the terms of the Guaranty, use of the Cash Collateral Account requires Forrester on behalf of Defendant, MM Guaranty LLC to agree to a disbursement from the Cash Collateral Account.

15. Following a number of funding requests pursuant to the terms set out in the Consent Order, and following responses from various parties, the Receiver filed a Motion to Compel [Dkt. No. 32] on September 30, 2023 to seek access to the approximately $887,000 of Cash Collateral Account funds in the possession of WFAH for use at the Property.

16. On October 16, 2023, MM Guaranty LLC filed an opposition to the Receiver's Motion to Compel [Dkt. No. 34] (the "Opposition to Motion"). On October 23, 2023, the Receiver filed a reply to the Opposition to Motion [Dkt. No. 37].

This Courts Order Granting Motion to Compel

17. On December 12, 2023 the Court entered an Order resolving the Receiver's Motion to Compel (the "December 12 Order") [Dkt. No. 41], requiring Forrester and MMG to provide WFAH with written authorization to disburse any and all available funds in the Cash Collateral Account to the Receiver.

18. In the December 12 Order, the Court found that MMG and Mr. Forrester were "Owner Parties" required to cooperate with the Receiver, [Dkt. No. 41 at 1-2], and that the Cash Collateral Account is one of the bank accounts that the Consent Order permits the Receiver to control, [Dkt. No. 41 at 2]. The Court rejected MMG's counterarguments. [Dkt. No. 41 at 3]. As a result, the Court granted the Receiver's Motion to Compel and "ordered that MMG and Forrester shall provide WFAH with written authorization to disburse any and all available funds

in the Cash Collateral Account to the Receiver and to execute any ancillary documents that may be necessary to effectuate such disbursements.

19. Following the entry of December 12 Order, WFAH provided a letter to Defendant's counsel on December 13, 2023. A copy of that letter, with the referenced financial accountant numbers redacted, was filed with this Court at [Dkt. No. 45-1].

20. In that Letter, counsel for the WFAH explained its understanding that the Receiver through counsel "has requested Mr. Forrester and MM Guaranty provide consent and written authorization for disbursement of funds from the Cash Collateral Account in compliance with the Court's Order" and that WFAH was writing separately to make the same request. WFAH prepared a one-page proposed consent form, authorizing the release of the Cash Collateral Account funds to the Receiver. WFAH asked Forrester to sign on behalf of MMG; MM Property Development, LLC; and MM Assets, LLC. WFAH further stated that "[w]e are open to discussing the form of the attached consent, if requested, but fully expect Mr. Forrester's compliance with this request, and the Court's Order, as set forth herein."

21. WFAH requested that Mr. Forrester execute and return the proposed form to WFAH by no later than Monday, December 18, 2023. WFAH indicated that if Forrester did not do so, WFAH may seek leave to interplead the funds available in the Cash Collateral Account for distribution by the Court and would otherwise cooperate with the Receiver.

22. Forrester and MMG did not execute the form proposed by WFAH by December 18, 2023. WFAH has not yet interplead the funds.

23. On December 22, 2023, the Receiver, through counsel, asked counsel for the Defendants to confirm they would comply with the Court's Order and requested the parties meet and confer.

5

24. Counsel for the Defendants stated he intended to file a motion for a status conference. On December 27, 2023, the Defendants filed *Defendant's Request for Status Conference Regarding Court's Order on Receiver's Motion to Compel the Authorization of Withdrawal of Cash Collateral Funds From the MM Guaranty LLC Bank Accounts* (the "Request for Status Conference"). [Dkt. No. 43].

25. On December 28, 2023, counsel for the Defendants provided a revised proposed form of consent to counsel for WFAH. A copy of that letter, with the referenced financial accountant numbers redacted, was filed with this Court at [Dkt. No. 45-2].

26. The Receiver filed a *Receiver's Response to Defendants' Motion for Status Conference* on January 2, 2024. [Dkt. No. 45].

27. On January 9, 2024, Defendants filed a further reply, stating they " intend to comply with the Court's Order to allow authorization for the Receiver to obtain the MMG Cash Collateral Bank Account funds held and controlled by Wells Fargo" but also expressing a concern that Defendants could face legal liability for permitting the Receiver access. [Dkt. No. 46 at 1]. Defendants also argued that WFAH may be able to release the cash collateral funds without MMG's authorization and asked for "the opportunity to discuss such a path forward." [Dkt. No. 46 at 2].

28. An in-person status conference is currently scheduled to be held in this case on February 22, 2024 at 9:00 a.m. [Dkt. Notice Jan. 26, 2024].

<u>Mr. Forrester and MMG are Refusing to Comply with the Court's Order</u>.

29. Following the entry of the December 12, 2023 and the filing of the Defendant's Motion for a Status Conference, the parties attempted to resolve their issues. However, MMG and Forrester have since abandoned good faith negotiations and are refusing to provide the

6

consent required by this Court's December 12 Order. Meanwhile WFAH has not proceeded to interplead or turnover the funds.

30. This has left the Receiver at an impasse without necessary funds to stabilize the Property.

31. The Receiver has attempted to resolve the matter through good faith discussions with the parties. *See* **Exhibit A** (email discussions between the parties).

32. In those discussions, MMG and Forrester have asserted that Freddie Mac's Notice of Default terminated MMG and Mr. Forrester's rights with respect to the Cash Collateral Account. As a result of that termination, MMG and Forrester contend their consents are no longer necessary for any turnover. However, MMG and Forrester have, so far, not been willing to memorialize that position in writing or agree to not assert liability against WFAH if WFAH were to turn over the funds to the Receiver in reliance on MMG and Forrester's assertion. *See* Exhibit A at 1.

33. The Receiver scheduled meetings with counsel for WFAH and MMG on January 22, January 30, February 1, and February 5, 2024 to attempt to reach a mutual agreement.

34. While the parties made some initial progress on January 22, 2024, including exchanging a proposed consent, MMG and Forrester following that meeting chose to add a demand that WFAH provide broad indemnity against unknown claims as a condition for consenting to the release of Cash Collateral Account funds, which was not a term WFAH could agree to. *See* Exhibit A and 8–9.

35. The Receiver attempted to engage the parties in efforts to talk through these items but counsel has indicated they were either unable to discuss proposals with their client or were not given authority to participate. *See* Exhibit A at 1–7. Counsel for MMG and Forrester has

indicated that Forrester may have had been unavailable at points due to medical leave but has also indicated having discussions and meetings with their client that have not led to the circulation of further proposals. As a result, the parties have not had further substantive discussions since the January 22, 2024 meeting.

36. The Receiver asked for a further clarification regarding the nature of the problem, but Defendants so far have not provided an explanation. Exhibit A at 1–4.

37. On February 5, 2024, the Receiver, through counsel, provided notice that he intended to ask this Court to hold Defendants in contempt for failing to provide their consent to the turnover of the cash collateral account funds as required by this Court's December 12, 2023 Order. *See* Exhibit A at 1. In that notice, the Receiver summarized the position of the parties and noted the efforts made to accommodate the Defendants but that calls had been cancelled without a notice or explanation.

38. Since the Receiver provided that notice on February 5, 2024, the Receiver understands that counsel for MMG and Forrester have had further conversations with their client but no further draft or proposed authorizations have been circulated.

39. The Receiver therefore believes this Court's intervention is required to resolve the issue.

## **Relief Requested**

Federal Courts have inherent civil contempt power to enforce their orders. *Charles H. v. D.C.*, No. 1:21-CV-00997 (CJN), 2022 WL 1416645, at *1 (D.D.C. Feb. 16, 2022) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). "The civil contempt power is essential to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 29

(D.D.C. 2014) (citing *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C.Cir.2006)) (internal quotation omitted).

Civil contempt is a purely remedial power, focused on coercing compliance, rather than the infliction of punishment. *Univ. of Colo. Health at Mem'l Hospital v. Becerra*, 531 F. Supp. 3d 10, 19 (D.D.C. 2021) (citing *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1016 (D.C. Cir. 1997)).

The Court can hold a party in civil contempt "if the putative contemnor has violated an order that is clear and unambiguous, and the violation must be proved by clear and convincing evidence." *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (quoting *Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993)). Ultimately, though, whether a party should be held in contempt lies in the Court's discretion. *Marshall v. Local Union No. 639, Int'l Bhd. of Teamsters*, 593 F.2d 1297, 1303 (D.C. Cir. 1979).

Should the Court determine civil contempt sanctions are appropriate, the sole purpose of such sanctions, is "to coerce compliance or compensate a complainant for losses sustained." *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.,* 750 F.Supp.2d 31, 34 (D.D.C. 2010) (quoting *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 823 (D.C. Cir.2009)). When determining the scope and severity of sanctions, "a court must exert only so much authority of the court as is required to assure compliance." *Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F.Supp.2d 35, 38 (D.D.C.2010) (internal citation omitted). But within such framework, "[c]ourts have wide discretion in fashioning remedial sanctions for civil contempt." *SEC. v. Levine*, 671 F.Supp.2d 14, 36 (D.D.C.2009) (citation omitted). "The arsenal of sanctions available to a court for civil contempt includes compensatory

and coercive fines, as well as imprisonment." *Latney's Funderal Home*, 41 F. Supp. 3d at 36 (citing *Pigford v. Veneman*, 307 F.Supp.2d 51, 55–57 (D.D.C. 2004).

Here, the Court should exercise its discretion and hold MMG and Forrester in contempt for failing to comply with the December 12, 2023 Order. This Court's order was clear and unambiguous and required that "MMG and Forrester shall provide WFAH with written authorization to disburse any and all available funds in the Cash Collateral Account to the Receiver and to execute any ancillary documents that may be necessary to effectuate such disbursements." [Dkt. No. 41]. Ancillary documents were provided by WFAH on December 13, 2023. *See* [Dkt. No. 45-1]. The document was simple, one-page, and reasonable in scope. Yet MMG and Forrester refused to execute it.

In addition, the Receiver and WFAH attempted to resolve any concerns Defendants may have had about the form of consent. The exchanges between the parties make clear that MMG and Forrester do not intend to cooperate in good faith and simply do not wish to comply with the Court order and facilitate turnover of funds to the Receiver. *See* Exhibit A.

Under the circumstances the Receiver believes civil contempt sanctions are warranted. In the Receiver's view, a daily fine and award of attorney's fees should be appropriate to compel Defendants compliance. Though the Court should retain the authority to impose additional coercive sanctions to the extent the initial sanctions imposed are not successful in compelling Forrester and MMG to comply with the Court's December 12 Order.

Moreover, in its correspondence of December 13, 2023, WFAH stated that it reserved the right "to seek leave to interplead the funds available in the Cash Collateral Account for distribution by the Court and will cooperate with the Receiver should he deem additional motion practice necessary." WFAH provided a deadline of December 18, 2023. But, despite that

deadline passing, WFAH has not proceeded to interplead the funds. To facilitate turnover of the funds and compliance with the December 12 Order , the Receiver suggests the Court make clear that WFAH has this Court's leave to either interplead the funds and distribute the funds to the Receiver in order to effectuate the terms of the Receivership Order and the turnover order entered by this Court.

WHEREFORE, the Receiver respectfully requests this Court enter an order holding Forrester and MMG in contempt, imposing sanctions, and authorizing WFAH to interplead the cash collateral account funds and/or distribute the funds to the Receiver.

Dated: February 12, 2024                                              Respectfully submitted,

*/s/ Bradley D. Jones*
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
Stinson LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, D.C. 20006
Tel:  (202) 728-9903
Fax:  (202) 572-9943
brad.jones@stinson.com
joshua.cox@stinson.com

*Attorneys for Marc E. Albert, Receiver*

CORE/3528062.0002/187445338.1

## Certificate of Service

I hereby certify that, on the 12th day of February 2024, I filed the foregoing with the Court using the CM/ECF system, which will electronically serve all counsel of record who have entered an appearance in this case. A copy was also served on counsel for WFAH by email to Joshua S. Weiner, Esq at Joshua.Weiner@KutakRock.com and Craig B. Young, Esq. at Craig.Young@KutakRock.com.

*/s/ Bradley D. Jones*
Bradley D. Jones