# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FEDERAL HOME LOAN<br>MORTGAGE CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:23-cv-01642 |
| | ) | |
| v. | ) | |
| | ) | |
| MM PROPERTY LLC, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## RECEIVER'S STATUS REPORT

Marc E. Albert, Court-appointed receiver ("Receiver"), by counsel, submits the following Status Report as ordered by the Court on June 30, 2023. On June 30, 2023, the Court entered a Consent Order (the "Receivership Order") [ECF Dkt. No. 21] appointing Marc Albert as receiver for the property known as Mayfair Mansions III located at 3743-3817 Jay Street NE, Washington, DC (the "Property"). The Property is comprised of a 160-unit apartment complex located in the southeast quadrant of Washington, DC, and, prior to the appointment of the Receiver, was both owned and operated by defendant MM Property LLC and its principal Scott Forrester ("Mr. Forrester").

Paragraph 18 of the Receivership Order provides that the "Receiver shall from time to time, but at least on a monthly basis, provide the Court, Freddie Mac and to all counsel in this case a report of the Receivership Estate, including all receipts and expenditures of and by the Receiver, the Receiver's activities at and in regard to the Property, and the condition of the Property (each a "Receiver Report.")." Receivership Order at ¶ 18. The following report supplements the previous Receiver's Status Reports foiled to-date in the case.[1]

---

[1] *See* ECF Dkt. Nos.26, 28, 33, 38, 40, 44, 48, 59, 67, 69, 71, 72, and 73.

**Status of Receiver Funding and Property Operations**

As reported in the Receiver's July 31, 2024 Status Report [ECF Dkt. No. 73], the Receiver requested $450,000 in additional funding from Freddie Marc on May 15, 2024, to cover operational shortfalls at the Property. In response, Freddie Mac directed the Receiver to approximately $456,800 in an Operating Reserve Fund held by US Bank pursuant to a bond indenture agreement entered into when MM Property acquired the Property. After coordinating with relevant parties and completing the necessary procedures, the Received successfully requisitioned the funds and received $456,610.97 from US Bank on August 9, 2024.

Although use of the received reserve funds is expected to improve the month-to-month operations at the Property, the Property is likely to still be running at an operational loss through the rest of the 2024 calendar year and beyond. The Property currently is continuing to experience both a high vacancy rate as well as high rate of existing tenants that are not paying rent. At the same time, the administrative processes in the District surrounding both approval of move-ins for tenant's receiving housing aid, as well as the rental assistance and eviction processes for current non-paying tenants are moving slowly. The gap to stabilization at the Property is further evident when considering that previous Budget projections submitted by the Receiver do not include or factor in the accruing monthly charges towards the Property's secured debt to Freddie Mac and the Receiver is not anticipating paying such amounts at this time based on the current operational levels at the Property.

The Receiver is presently working with Noble to develop revised projections for the Property factoring the recent successful influx of reserve funds coupled with the review and revision towards the projected income and expense metrics at the Property based on additional

CORE/3528062.0002/192232914.1

data from the Receiver's previously submitted budget. The Receiver is likely to file this updated budget as a supplement to this report before the receiver's next monthly report to the Court.

**Property Management July 2024 Monthly Operational Summary Report Accrual**

As reported in the Receiver's initial report to the Court, the Receiver has employed Mario Lloyde ("Mr. Lloyde") and Noble Realty Advisors, LLC ("Noble" or "Property Manager") to serve as the Receiver's property manager for the Property to oversee day-to-day operations and rehabilitation efforts. Noble's services to the Property commenced immediately upon the Effective Date of the Receivership on July 1, 2023. As part of Noble's services to the Receiver, they are to prepare and submit to the Receiver monthly reports of their efforts and provide relevant financial information concerning the income and expenses seen at the Property (each a "Noble Report"). In that respect, Noble has recently prepared and submitted to the Receiver its Monthly Operating Summary Report Accrual for the month of July 2024, a copy of which is attached hereto as **Exhibit A.**

As seen in the July 2024 Noble Report, income collected during the month totaled $109,588.60 from rents derived from the Property and other deposits. Actual disbursements for the month of July 2024 from Noble totaled $87,332.52[2], leaving a reconciled cash balance in Noble's operating account with John Marshall Bank of $139,530.19 as of July 31, 2024. Noble's security deposit account with John Marshall Bank has an available and reconciled cash balance of $247.00 as of July 31, 2024. In addition to the income into Noble's property management accounts at John Marshall Bank, the Receiver is also submitting with this Receiver Report, the deposit and disbursement log for his accounts maintained at Axos Bank through August 22, 2024, attached hereto as **Exhibit B**. As previously reported, due to an alert from Axos Bank

---

[2] These amounts do not include disbursements for Receiver fees and fees of the Receiver's counsel which were completed directly from the Receiver's accounts and reflected on the attached Exhibit B.

about a potential security breach, the Receiver created a new operating account ending in 0505 and transferred the operating funds into it on the bank's recommendation. The disbursement report reflects that there are no transactions made in July 2024 in the Receiver's old operating account ending in 0406. The reconciled cash balance in the Receiver's old operating account ending in 0406 remains $376.72. During July 2024, there were two disbursements made from the Receiver's new operating account ending in 0505: $17,005.89 to Receiver for professional services and disbursements rendered through May 31, 2024, and $26,798.50 to Stinson LLP for fees and expenses through May 31, 2024 for professional services and disbursements. The reconciled cash balance in the Receiver's new operating account ending in 0505 for July 2024 was $27,197.83. The Receiver additionally received and is maintaining funds earmarked as tenant security deposits totaling $94,010.41 in a separate interest bearing account at Axos Bank reflecting $159.12 in interest generated in July 2024. The Receiver also maintains a reserve account ending in 0414. There were no transactions in this account. The balance of this account is $0.00.

In addition to actual disbursements from the various accounts maintained by Noble and those maintained exclusively by the Receiver, expenses either incurred or booked for the Property for July 2024 totaled $184,468.83[3]. This amount does not include monthly payments that are continuing to accrue towards the Property's secured debt owing to Freddie Mac, which until the Property is financially stabilized, monthly payments towards Freddie Mac will likely continue to go unpaid.

---

[3] Because Noble operates their books for the Property on an accrual basis, this amount does not reflect expenses solely incurred during the month of July 2024. Noble received invoices for work and services incurred at the Property prior to July 2024 during the month that were booked into Noble's records for the reporting period.

CORE/3528062.0002/192232914.1

Outstanding booked payables as of July 31, 2024 for the Property totaled $649,236.21.[4] These payables include both current payables booked since the inception of the receivership, as well as payables known to Noble that were incurred prior to the receivership. Noble has provided a sorted payables list, attached as **Exhibit C**, indicating payables for known pre-receivership non-utility items totaling $181,969.47[5], payable values for non-utility items incurred since the inception of the Receivership totaling $191,513.74, and payable values for utility items incurred pre-receivership through July 2024 totaling $275,753.00[6].

**Conditions at the Property**

As previously reported by the Receiver, Noble prepared a comprehensive report on the conditions at the Property, which was included in the Receiver's previous report filed on October 30, 2023. (Receiver's Status Report, Ex. D [ECF Dkt. No. 38]). Since that report, Noble has slowly been making repairs to vacant units at the Property and common areas with available funds collected from rent received from the Property and received reserve funds, while continuing to address general ongoing maintenance from tenant repair and maintenance requests as they are received. As previously reported, at current operational levels and with additional received funding into the Receivership, Noble is presently generally able to address tenant maintenance and repair requests for the currently occupied units as they arise, but not without cost and funds of the Receivership are depleting over time. If the Property were to be operating outside of the present

---

[4] Again, this value does not include monthly amounts accruing for the Property's secured debt, which is going unpaid through the pendency of the Receivership.

[5] The value of the booked pre-receivership payables does not at this time include a value attributed to Tempo Inc. t/a Annapolis Painting Services, Inc. ("Tempo"). Tempo has made attempts to assert a mechanic's lien against the Property and has filed a Complaint in the DC Superior Court (Case No. 2023-CAB-004257) against the Property for unpaid work Tempo did at the Property pre-receivership totaling $520,403.49. On February 7, 2024, the Receiver filed his *Receiver's Motion to Stay State Court Litigations over Pre-Receivership Claim*, seeking issuance of a stay of this matter based on the Receivership Order. On May 21, 2024, the Court issued its Order granting the Receiver's motion enjoining further action in the Tempo State Court litigation.

[6] This balance includes the full amount currently known to Noble that is owed to DC WASA and Pepco for utility services. The majority of these charges, however, were for charges incurred prior to the receivership.

receivership (including the need to pay the monthly secured debt at the Property), the month-to-month rental income collections would not sustain the Property's operations and the Property would be operating at a significant, severe shortfall. Presently the Receivership is only able to operate through (1) deferring the Property's secured debt payments, and (2) use of the various reserve funds it has received to date.

Of the 160 units at the Property, the units may generally be classified into four categories: (A) Occupied Units – those units presently occupied by leased tenants; (B) Leased Vacant Units – fully repaired but presently vacant units that have been assigned to either a fully approved tenant lease or are waiting for final voucher approval from a corresponding agency for move-in; (C) Unleased Vacant Units  - vacant units either ready for tenant move-in or could be made ready with relatively minor repairs, but not assigned to an existing pending tenant lease; and (D) Down Units – seven units at the Property that are presently gutted and will require significant rehabilitation time and cost to be brought back online for tenant use. The present makeup of the units at the Property is as follows:

**A. Occupied Units:**          **112**

**B. Leased Vacant Units:**      **9**

**C. Unleased Vacant Units**      **32**

**D. Down Units**               **7**

Since the Receiver's last monthly report, Noble successfully completed two tenant move-ins to vacant units at the Property from its existing approved applicant pool. Noble expects two more move-ins in early September. Noble has reported to the Receiver that the move-in rate at the property is progressing at a slower rate currently than initial projections. This appears generally attributable to a District-wide slowdown of the administrative approval processes for the relocation

of voucher tenants. Additionally, Noble is reporting that the delivery of payments from the District's Emergency Rental Assistance Program ("ERAP") also seem to be experiencing delay, which (10 is causing delay of receipt of those funds at the Property which would help to cure various tenant back rent issues, and (20 is slowing the progression of landlord tenant cases in the DC Superior Court, as that court generally enters a stay for the cases of tenants with an open ERAP application until either funds are delivered or the application is denied. A combination of all of these factors appears to be slowing down the low income housing market, which for the Property is reducing the ability to quickly move tenants in to available vacant units as well as moving non-paying tenants out and replacing them with rent-paying tenants.

With respect to the existing vacant units (both leased and unleased), thirteen (13) in total (9 Leased and 4 Unleased) are currently rehabilitated and have been made ready for a tenant move-in. Noble is currently waiting on five (5) units to be inspected by DC Housing Authority. Turnover of two units is expected to be completed by early September. The remaining thirty-two (32) unleased vacant units will require some degree of rehabilitation to be made-ready for tenant use at a cost of approximately $2,000 - $5,000 per unit. Noble intends to expend funds to complete repairs in these units on a rolling basis as it receives lease applicants that meet its internal approval metrics and, if necessary, appear to be able to meet the approval guidelines necessary to receive HAP funds with the appropriate District agencies. The HAP voucher approval process, including unit inspection, typically takes approximately eight weeks for the tenant to be approved to move into the Property. Following that approval, there may be further delay before the tenant is able to fully move in to the Property due to the tenant needing to provide proper notice to his or her current landlord of their intention to move out of their leased premises. Noble is continuing its rehabilitation and marketing efforts to rent the other available units at the Property to stabilize

CORE/3528062.0002/192232914.1

monthly operations, with their efforts expected to continue in the coming months to decrease the vacancy rate at the Property.

Additionally, during the month of August a fire occurred in one of the occupied units at the Property attributable to a tenant caused kitchen fire, which was doused through efforts of the D.C. Fire Department. No tenant injuries occurred and the tenant did not require relocation due to the limited extent of the damages. Noble is working on repairs as a result of the fire, which included fire and smoke damage to the tenant unit as well as water damage to the unit and a few surrounding units from the fire department's suppression efforts. In total, the damage from the event is expected to be less than $10,000, which is lower than the Property's insurance deductible and will not require an insurance claim.

**Continued Need for Tempo Injunction**

Previously, Tempo Inc. t/a Annapolis Painting Services, Inc. ("Tempo") made attempts to assert a mechanic's lien against the Property and filed a Complaint in the DC Superior Court (Case No. 2023-CAB-004257) against the Property for unpaid work Tempo did at the Property pre-receivership totaling $520,403.49 (the "Tempo Litigation"). On February 7, 2024, the Receiver filed his *Receiver's Motion to Stay State Court Litigations over Pre-Receivership Claim*, seeking issuance of an injunction enjoining and staying this matter based on the Receivership Order and the current cash and operational levels of the Receivership. On May 21, 2024, the Court issued its Order granting the Receiver's motion enjoining further action in the Tempo State Court litigation (the "Tempo Stay Order"). On June 11, 2024, the Receiver filed the Suggestion of Receivership Stay of Proceedings in the Tempo Litigation.

In addition to temporarily enjoining and staying continuation of Tempo Litigation, the Tempo Stay Order provided that the "Receiver shall address the continuing propriety of this

injunction in each of the regular status reports that it files with the Court." Given the current projected operational levels, the injunction provided for in the Tempo Stay Order is still needed at this time.

Dated: August 31, 2024                    Respectfully submitted,

                                          /s/Joshua W. Cox
                                          Joshua W. Cox, No. 1033283
                                          Bradley D. Jones, No. VA 68
                                          Stinson LLP
                                          1775 Pennsylvania Ave., N.W., Suite 800
                                          Washington, D.C. 20006
                                          Tel:  (202) 728-3023
                                          Fax:  (202) 572-9943
                                          joshua.cox@stinson.com
                                          *Attorneys for Marc E. Albert, Receiver*

## Certificate of Service

I hereby certify that, on August 31, 2024, I filed the foregoing with the Court using the CM/ECF system, which will electronically serve all counsel of record who have entered an appearance in this case.

                                          /s/ Joshua W. Cox
                                          Joshua W. Cox

CORE/3528062.0002/192232914.1