**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FEDERAL HOME LOAN
MORTGAGE CORPORATION

      Plaintiff,

      v.                           Case No. 1:23-cv-01642 (CJN)

MM PROPERTY LLC, et al.,

      Defendants.

**AMENDED CONSENT ORDER**

This cause of action was originally submitted to the Court upon the Motion for Appointment of Receiver, Entry of Preliminary Injunction and Permanent Injunction ("Motion") by the Plaintiff, Federal Home Loan Mortgage Corporation ("Freddie Mac"), by and through its attorneys; and upon the record in this action, including the Complaint for Appointment of Receiver and Other Relief ("Complaint"),[1] the Declarations and facts therein, and the Memorandum of Points and Authorities in Support of Motion for Appointment of Receiver, Entry of Preliminary Injunction and Permanent Injunction ("Memorandum"), and upon the consent of the parties hereto.

By the Motion, and in order to facilitate the transition of operation of the Property identified therein and herein, following default under the indebtedness identified therein, Freddie Mac seeks the appointment of a receiver to enter upon and take control, power and authority over the assets, management, operations, maintenance, leasing, repair, and preservation of the subject property, known as Mayfair Mansions III, located at 3743-3817 Jay Street NE, Washington, DC, (the

---

[1] Capitalized terms used herein shall have the meaning for such terms specified herein, or in the Complaint if not defined herein.

"Property") both real and personal, including the operation of the Property and collection and disposition of rents, revenue and funds thereof.

With regard to these matters, the Court entered a Consent Order endorsed by all necessary parties on June 30, 2023.  ECF No. 21.  On August 2, 2024, the Receiver appointed through the June 30, 2023 Consent Order, Marc Albert, filed a motion requesting that the Consent Order be amended to provide him with the authority to file needed tax returns on behalf of the Property's owner, MM Property, LLC.  The Court now issues this Amended Consent Order to enact the Receiver's requested amendments.

## FINDINGS IN SUPPORT OF ORDER

Based on the record in this matter, this Court finds that the following facts have been established by Plaintiff:

1. On October 1, 2011, MM Property, LLC ("Owner") executed in favor of the District of Columbia Housing Finance Agency ("DCHFA") a Bond Mortgage Note ("Bond Note") in the original principal amount of $11,000,000.00, pursuant to which Owner promised, *inter alia*, to pay to the order of DCHFA the sum advanced together with all accrued interest (hereinafter "Bond Loan").

2. DCHFA issued its Multifamily Housing Revenue Bonds (Mayfair Mansions III Project) ("Bonds") to provide financing to Owner for the Property, as evidenced by the Eleventh Supplemental Indenture dated October 1, 2011 ("Indenture") between DCHFA, as Issuer, and U.S. Bank, National Association as Trustee ("U.S. Bank" or "Trustee").

3. Contemporaneously with the execution of the Bond Note and to secure its payment, Owner executed and delivered a Multifamily Deed of Trust, Assignment of Rents and Security Agreement (Bonds) for the Property dated as of October 1, 2011 and recorded among the land records of Washington, D.C. as Instrument No. 201108389 (hereinafter the

"Bond Deed of Trust") in favor of DCHFA as secured party.  The Bond Deed of Trust conveys the Property, together with all buildings, improvements, fixtures, personal property included in the Property, leases, licenses, and occupancy agreements, among other items, as security for the Bond Loan.

4.      On October 1, 2011, DCHFA executed an Assignment, on or about October 1, 2011, by which DCHFA assigned the Bond Note to Trustee. Wells Fargo Bank, N.A. ("Servicer") is the servicer for the Bond Loan.  The Indenture, the Bond Note, the Bond Deed of Trust, and the Bond Assignment, are hereinafter collectively referred to as the "Bond Loan Documents."

5.      At the request of Owner, Freddie Mac executed a Credit Enhancement Agreement dated as of October 1, 2011 (the "Credit Enhancement Agreement") to provide credit enhancement for the Bonds by making the payments of principal and interest on the Bonds to the Trustee upon the terms set forth in the Credit Enhancement Agreement.

6.      To evidence Owner's reimbursement obligations to Freddie Mac as a result of payments made by Freddie Mac under the Credit Enhancement Agreement, Freddie Mac and Owner executed a Reimbursement and Security Agreement dated as of October 1, 2011 (the "Reimbursement Agreement"), in which Owner agreed to reimburse Freddie Mac for payments made by Freddie Mac under the Credit Enhancement Agreement, and other obligations of Owner under the Reimbursement Agreement (hereinafter the "Reimbursement Loan" and together with the Bond Loan, the "Loans.")

7.      Contemporaneously with the execution of the Reimbursement Agreement and to secure Owner's payment and other obligations under the Reimbursement Agreement, Freddie Mac and Owner executed a Multifamily Deed of Trust, Assignment of Rents and

Security Agreement dated October 1, 2011 (hereinafter the "Reimbursement Deed of Trust") and recorded among the land records of Washington, D.C. as Instrument No. 2011108390. The Reimbursement Deed of Trust conveys the Property together with all buildings, improvements, fixtures, personal property included in the Property, leases, licenses, and occupancy agreements, among other things, as security for the Reimbursement Agreement. The documents evidencing the obligations of Owner to Freddie Mac pursuant to the Reimbursement Agreement are referred to herein as the "Reimbursement Loan Documents," and together with the Bond Loan Documents collectively the "Loan Documents."

8.      Also on October 1, 2011, DCHFA, Trustee, Freddie Mac, and Servicer executed an Intercreditor Agreement, which was recorded among the land records of Washington, D.C. on October 27, 2011 as Instrument No. 2011108402 (hereinafter the "Intercreditor Agreement") and which relates to the respective rights of the parties thereto with respect to the Bond Loan Documents and the Reimbursement Loan Documents.

9.      Pursuant to the Intercreditor Agreement, upon a default under the Bond Loan Documents or the Reimbursement Loan Documents, Freddie Mac has the right and authority to take or direct any available rights or remedies under either the Bond Loan Documents or the Reimbursement Loan Documents.[2]

10.     The Intercreditor Agreement and the Reimbursement Deed of Trust provide that a default under the Bond Loan constitutes a default under the Reimbursement Agreement.

---

[2] Certain provisions of the Bond Loan Documents and the Reimbursement Loan Documents reference Owner as "Borrower" and reference the payee thereunder and party secured by the Bond Deed of Trust and/or the Reimbursement Deed of Trust as "Lender."

11.    Good and sufficient notices of default have been given to Owner as identified in the Complaint, and defaults under the Loans remain uncured, as a result of which the Loans have been accelerated by the Acceleration Notice dated December 21, 2022 from Trustee as identified in the Complaint, and all amounts under the Loans are due and payable in full and remain unpaid.[3]

12.    Pursuant to Section 3(d) of the Reimbursement Deed of Trust, Owner, as grantor thereunder, expressly authorized and consented to the appointment of a receiver of the Property following an Event of Default, at the election of the secured party thereunder:

> [I]f an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte if permitted by applicable law.

13.    Pursuant to Section 3(d) of the Reimbursement Deed of Trust, Owner further agreed that, following an Event of Default, Owner would (i) surrender possession of the Property to a receiver and (ii) cooperate fully with the receiver's efforts to take control of the property:

> Immediately upon appointment of a receiver . . . Borrower shall surrender possession of the Mortgaged Property to . . . receiver . . . and shall deliver to . . . receiver . . . all documents, records (including records on electronic or magnetic media), accounts, surveys, plans,

---

[3] Owner disputes the facts of certain nonmonetary defaults alleged in the Motion and the Complaint; however, Owner consents to the appointment of a receiver pursuant to the terms of this Consent Order.

and specifications relating to the Mortgaged Property and all security deposits and prepaid Rents.

14.     Pursuant to Section 3(b) of the Reimbursement Deed of Trust, Owner agreed that, following an Event of Default, Owner authorized Freddie Mac to revoke the revokable license of Owner to collect and receive rents from the Property, and to collect rents from the Property and direct tenants to pay rents as directed by Freddie Mac:

> After the occurrence of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender.

15.     By the Acceleration Notice, Trustee notified Owner that it exercised its right to all rent and other revenue from the Property which must be immediately tendered to Servicer:

> THE UNDERSIGNED, AS TRUSTEE, FURTHER NOTIFIES YOU THAT PURSUANT TO PARAGRAPHS 3 AND 4 OF THE BOND MORTGAGE THE TRUSTEE, HAS EXERCISED ITS RIGHTS TO ALL RENTS, MAINTENANCE CHARGES, REVENUES, AND SECURITY DEPOSITS GENERATED BY THE PROPERTY SECURING THE BOND MORTGAGE NOTE PURSUANT TO THE BOND MORTGAGE. ALL SUCH RENTS, MAINTENANCE CHARGES, REVENUES, AND SECURITY DEPOSITS NOW IN YOUR POSSESSION OR HEREAFTER RECEIVED, NET OF ORDINARY, REASONABLE AND CUSTOMARY OPERATING EXPENSES, MUST BE IMMEDIATELY TENDERED TO SERVICER.    Any such payments collected after the date of this letter, and for each month thereafter, must be turned over directly to the Servicer to be applied to any amounts now due and owing under the Bond Mortgage Note and Bond Mortgage.  Acceptance of such payments by the Servicer shall not constitute a waiver of any of the Trustee's or Freddie Mac's rights and remedies under the Bond Mortgage Note and Bond Mortgage, including, without limitation, the Trustee's acceleration of the Loan and the Trustee's right to commence a foreclosure action and to seek the appointment of a receiver.

16.     Freddie Mac filed a motion for appointment of receiver and entry of preliminary and permanent injunction (the "Motion") on June 7, 2023.  Freddie Mac has requested that the Court appoint Marc E. Albert (the "Receiver"), as a receiver for the Property.

17.     Freddie Mac has requested that the Receiver's assigned duties be to take possession and control of the Property, receive the rents, revenue, fees, other charges and profits from the Property, operate the Property, and pay taxes, utilities and other necessary expenses; to care for the Property; to take possession of and examine the books and records of Owner for the Property, to oversee and approve any actions with respect to the Property, including, any actions by Owner with respect to the Property or performance of Owner's obligations and enforcement of Owner's rights under tenant leases.

18.     Congress chartered Freddie Mac to facilitate the nationwide secondary residential mortgage market. *See* 12 U.S.C. § 1451. The Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110- 289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 et seq.), established the Federal Housing Finance Agency ("FHFA" or "Conservator") as Freddie Mac's primary regulator.

19.     In September 2008, pursuant to HERA, the Director of FHFA placed Freddie Mac into conservatorship, where it remains to this day. *See* 12 U.S.C. § 4617(a). As Conservator, FHFA succeeded to all of Freddie Mac's rights, titles, powers, privileges, and assets. 12 U.S.C. § 4617(b)(2)(A)(i). FHFA, as Conservator is statutorily empowered to "preserve and conserve [Freddie Mac's] assets and property," to "operate" Freddie Mac, to "perform all [of Freddie Mac's] functions in [Freddie Mac's] name," and to "collect all obligations and money due" Freddie Mac. 12 U.S.C. § 4617(b)(2)(B)(i)-(iv). Congress also mandated that "no court may take any action to restrain or affect the exercise of [FHFA's] powers or functions ... as a conservator." 12 U.S.C. § 4617(f). Because the Receiver derives its authority from the Court, Section 4617(f) also precludes the Receiver

7

from restraining or affecting the Conservator's exercise of its statutory powers and functions.

20.      FHFA has represented to Freddie Mac that FHFA supports the appointment of the Receiver on the terms set forth in the proposed Order accompanying Freddie Mac's Motion.  However, FHFA reserved its rights as to any other or different terms for the appointment of a receiver that have not been approved explicitly by FHFA in advance.

21.      The Motion is well taken and proper and should be granted.

**ORDER APPOINTING RECEIVER AND
ENTRY OF PRELIMINARY INJUNCTION**

Based on the record before this Court, it is hereby **ORDERED, ADJUDGED AND DECREED** by this Court that:

1.      <u>Appointment of Receiver</u>.  Plaintiff's Motion is hereby granted, and Marc E. Albert (the "Receiver") is hereby appointed as the Receiver for the Property ("Receivership"), effective as of noon on the next day after this Order is entered by the Court (the "Commencement Date").

2.      <u>Commencement of Receivership; Powers and Duties of Receiver</u>.  The powers and duties of the Receiver shall commence immediately upon the Commencement Date.  The Receiver shall be vested with all the powers and responsibilities of a receiver as provided in this Order, subject to the rights, titles, powers, privileges, and functions of FHFA under HERA.  FHFA retains all of its federal powers and functions including the right to assert such powers and protections to preclude the Receiver and the receivership from restraining or affecting the Conservator powers or functions as to Freddie Mac interests at issue herein.

3.      <u>Control by Receiver; Receivership Estate</u>.  The Receiver shall, and is hereby

ordered, authorized and directed as of the Commencement Date to take possession of the Property and all fixtures and personal property located on or at the Property, subject to the rights of others, including any tenants or vendors of the Property, together with all related fixtures and personal property, which shall include all Rents, Funds, Security Deposits, Books and Records, and Accounts of the Property (each as defined below or in the Bond Loan Documents or the Reimbursement Loan Documents, and all tangible assets of Owner relating to or arising from the Property (collectively the "Receivership Estate"). Notwithstanding the foregoing, nothing in this Order shall prohibit or limit Owner and Receiver from planning, prior to the Commencement Date, the turnover of property of the Receivership Estate to the Receiver, as long as the Receiver or its management company does not contact or interfere with current and active vendors or workers at the Property prior to the Commencement Date without prior written approval of Owner.

4.    <u>Operation of Property and Payment of Expenses; Professionals and Consultants</u>. The Receiver is authorized and directed to manage, maintain, repair, and operate the Property in a commercially reasonable manner.  As set forth in greater detail in paragraph 14 below, and subject to any approval requirement set forth below, the Receiver may enter into contracts for the operation, maintenance, and repair of the Property, and pay sums due under such Contracts from Rents and Funds held by the Receiver.  The Receiver may employ attorneys, accountants, consultants, brokers, appraisers, and other professionals as the Receiver reasonably deems necessary or appropriate to carry out the duties of the Receiver ("Professionals"), and such Professionals shall be paid as expenses of the Receivership from Rents and Funds of the Property.   The Receiver is specifically

authorized to engage as counsel for the Receiver the law firm of which the Receiver is a member.

5.      <u>Turnover to Receiver; Cooperation with Receiver</u>.   The Owner and all persons holding on behalf of Owner are hereby ordered and directed to surrender and deliver to the Receiver, promptly from and after the Commencement Date following the entry of this Order, possession of the Property and the entire Receivership Estate, including but not limited to all Rents, Funds, Security Deposits and Accounts, subject to the rights of tenants in possession under enforceable Leases (as defined below).   The Owner agrees to commence the process immediately and work diligently and faithfully to perform the turnover process in good faith without undue delays.   As of and from after the Commencement Date, the Owner and all parties holding property of the Receivership Estate on behalf of Owner shall have neither possession nor control of, nor any right to, the Property, Rents, Funds, Security Deposits, Leases, Accounts, or any of the Receivership Estate, nor control of any filings made or actions taken on behalf of the Property.   The Owner and its respective agents, members, officers, employees, attorneys, affiliates, and all persons with control or possession of any portion of the Property or the Receivership Estate (collectively "Owner Parties") shall reasonably and diligently cooperate with the Receiver in the turnover to Receiver of the Property and the Receivership Estate, in the Receiver's possession and operation of the Property and the Receivership Estate, the receipt by the Receiver of Rents, Funds, Security Deposits, and Accounts from or with respect to the Property, and in the Receiver performing the duties and exercising the power and authority of the Receiver under this Order.   Owner and all such parties holding property of the Receivership Estate on behalf of Owner are hereby enjoined and restrained from

interfering with or hindering the Receiver in carrying out and performing the duties of the Receiver under this Order.

6.  <u>Rents and Security Deposits</u>.  The Receiver is authorized to collect and receive all rents from the Property ("Rents"), and all income, receipts, revenue, and funds ("Funds" and together with Rents "Property Funds") derived from the Property, all deposits, including rental and security deposits of tenants ("Security Deposits") from or relating to the Property.  The Receiver is authorized to notify tenants and occupants of the Property to pay all Rents and Security Deposits to the Receiver.  The Receiver may return Security Deposits of tenants in accordance with applicable law, subject to receipt of such Security Deposits by the Receiver.

7.  <u>Leases, Rental and Operation of Property</u>.  Owner, any existing or prior management company, or any other party holding property of the Receivership Estate on behalf of Owner, shall diligently, promptly and as soon as reasonably practicable turn over to the Receiver originals or copies of all leases with tenants for the Property ("Leases"), and the Receiver shall have control over the Leases.  The Receiver shall administer the Leases, collect the Rents under the Leases, and shall have the exclusive authority to enforce, modify, amend, or terminate any Leases, and to enter into new Leases for the Property.

8.  <u>Management of Property</u>.  The Receiver is hereby authorized to employ a qualified property management company ("Property Manager") to assist in carrying out the Receiver's duties for the property, and the Receiver is hereby authorized to pay the Property Manager from Property Funds held by the Receiver for services rendered on a monthly basis as a necessary and reasonable expense of the Receivership without further

order of the Court.  Owner has provided a list of potentially conflicted parties identified by Owner.  The Property Manager shall receive a monthly management fee as reasonably determined by the Receiver on a per unit basis for the number of apartment units in the Property subject to any approval requirements set forth below.  The compensation paid to the Property Manager may be deducted and paid by the Receiver from Property Funds held by the Receiver.

9.      <u>Books and Records</u>.  The Receiver shall have access to all books and records of the Property, including Leases, Security Deposit records, rent rolls, and operating statements related to the management and operation of the Property, whether in hard copy or electronic form, including all financial records, tax returns, and any and all documents under the control of, or prepared by any third party on behalf of Owner ("Books and Records").  Books and Records generated by or at the request of the Receiver shall constitute Books and Records.  The Receiver and Owner, including the members of Owner, shall have access to and are authorized to receive and make copies of the Books and Records and information received by the Receiver, for Receiver's use in the operation of the Property and administration of the Receivership Estate, and may be used by Owner and its members in preparing Owner's financial records and tax returns, and in defending and responding to any claims that may be asserted against or by the members of Owner.  The Receiver will direct others to make the Books and Records and information received by the Receiver simultaneously available to the Receiver, and to the Owner and its members, for their use and for their records.

10.     <u>Locks and Keys</u>.  The Receiver shall have access to all locks, keys, combinations or access codes for locks, access cards, and other means to access locked areas of the

Property or relating to the Receivership Estate, including all lockboxes and locked drawers and cabinets, except for keys and access cards in the possession of residents of the Property. The Receiver is authorized to make copies of such keys, access cards, and other means to access locked areas of the Property and the Receivership Estate, for the Receiver's use in the administration of the Receivership Estate.

11.    <u>Accounts</u>.  The Receiver shall be authorized to open one or more bank accounts (each a "Receiver Account") to be held and operated under the Receiver's control, with respect to the Property and the Receivership Estate.  The Receiver is authorized to take control of and convert to Receiver Accounts any existing bank accounts in the name of or for the benefit of Owner, including existing reserve accounts for the Property maintained in Borrower's name under the terms of the Loan Documents ("Reserve Accounts"), or in the name of any current or prior property manager of the Property (collectively "Accounts"), or to receive and take control of any Funds in existing Accounts, and Owner and any current or prior property manager are directed to provide the Receiver with any information necessary for the Receiver to take control of any existing Accounts or Funds therein.  The Receiver shall be the signatory on any Receiver Accounts, or any existing accounts of which the Receiver takes control; provided that the Property Manager employed by the Receiver may also establish, with the Receiver's approval and under the supervision and control of the Receiver, any bank accounts necessary for the exercise of the Property Manager's duties with respect to the Property and the Receivership Estate ("Property Manager Accounts"), with the Property Manager and Receiver as authorized signatories on the Property Manager Accounts, and the Property Manager may collect, take possession of, and deposit Rents, Security Deposits, and other Property Funds into and pay

Expenses of the Property from the Property Manager Accounts as approved by the Receiver. The Receiver shall be authorized to take possession of and deposit in accordance with this Order and as allowed by applicable law any checks payable to Owner or to any property manager from tenants, vendors, and others. Any account maintained by the members of Borrower or by Borrower that is not required by and governed by the terms of the Loan Documents ("Borrower Separate Accounts") shall not constitute an Account that is subject to control by the Receiver.

12.     If funds are needed to finance Expenses, including immediate repairs, management, and security at the Property and Expenses of the Receiver, then:

  a.     The Receiver will first draw for Expenses from Property Funds and from funds in existing Reserve Accounts, to the extent permitted by the terms and regulations governing any Reserve Accounts;

  b.      Receiver may also request contributions for Expenses from Borrower or its members, or from Borrower Separate Accounts;

  c.      If additional funds are needed for Expenses, the Receiver may request monetary advances from Freddie Mac in accordance with Sections 3 and 12 of the Reimbursement Deed of Trust;

  d.     Freddie Mac may grant or deny the Receiver's requested monetary advances in its sole and absolute discretion;

  e.      Any agreed monetary advance provided by Freddie Mac pursuant to the Receiver's request shall be deemed the obligation of Owner and added to

14

the indebtedness owed to Freddie Mac.  Said advance(s), when made, will be treated as a protective advance pursuant to the terms of the Reimbursement Deed of Trust;

f.      If, following exhaustion of funds provided to the Receiver, funds are still needed for any Expenses, the Receiver must obtain Freddie Mac and FHFA approvals prior to seeking court approval to assert any of the Receiver's certificates or liens.

g.      Any and all of the Receiver's certificates or the Receiver's liens shall be subordinate to any interests of Freddie Mac under the Intercreditor Agreement, the Bond Loan Documents, or the Reimbursement Loan Documents.

13.   <u>Revenue and Expenses</u>.  The Receiver is authorized to demand, collect, and receive, all Rents, revenue, and Funds from or with respect to the Property.  The Receiver shall pay from Property Funds available to the Receiver all ordinary, necessary, and reasonable expenses for or with respect to the Property ("Expenses") arising or incurred from and after the Commencement Date of the Receivership.  The Receiver shall not be obligated to pay any Expenses incurred prior to the Commencement Date, except that the Receiver shall be authorized, in his discretion, to pay: (i) Expenses incurred and legally owed prior to the Commencement Date that are in the ordinary course of business and in accordance with normal periodic billing cycles, and/or (ii) other Expenses incurred and legally owed prior to the Commencement Date that the Receiver elects to pay in his discretion, in the interest of and for the benefit of the Property and the Receivership Estate, as long as such expenses have been reviewed to verify the legitimacy of the charges.  The Receiver is authorized to

expend Property Funds for the purpose of making any payments or distributions required or permitted to be made under this Order, including but not limited to Expenses incurred in connection with the operation, preservation and maintenance of the Property and the Receivership Estate, real estate taxes, water and sewer charges, obligations imposed by local or state codes or regulations or by regulatory authorities, utilities, repairs, supplies, taxes, wages and employment taxes, insurance premiums and deductibles under insurance policies, including for Insurance on Property and Receiver's Business Insurance, charges for services of Professionals, including accounting, tax return preparation and audit expenses, bank service charges, postage costs and courier and other delivery costs, inventory, office expenses, rent, security deposits, fee of the Property Manager, the Receiver Fee, and the costs of the Receiver Bond.  The Receiver may demand, collect, and receive all accounts receivable, including delinquent Rents.  The Receiver shall not expend monies, or make repairs or improvements to the Property, or incur or pay any other expenses or bills in connection with the role as the Receiver, except to the extent that monies for such expenses are available either from Property Funds received by the Receiver, and/or from funds provided by Freddie Mac or any other party.  To the extent cash flow from the Property is insufficient to pay the expenses of the Property and the Receivership, the Receiver is authorized to request funds from the Owner as necessary to pay such expenses.  Owner shall provide the requested funds within five (5) business days. In the event the Owner fails to provide the necessary funds, the Receiver is authorized to request funds from Freddie Mac as necessary to pay such expense as set forth in Paragraph 12 above.  All such amounts advanced by Freddie Mac shall be considered monetary

advances made under the Loans or Loan Documents and shall be secured by the Reimbursement Deed of Trust.

14.    Contracts.  Subject to Freddie Mac's rights set forth in this paragraph, the Receiver is authorized to enter into contracts and agreements for the operation, maintenance and repair, and security of the Property and to perform the duties of the Receiver for the Property and the Receivership Estate ("Contracts"), including Contracts with Professionals, and is authorized to pay expenses and charges under such Contracts from Property Funds held by the Receiver or from other funds available to the Receiver, subject to the provisions of Paragraph 23 herein the Receiver may amend, modify or terminate any Contracts, or any existing contracts or agreements for the Property entered into prior to the date of this Order that the Receiver determines not to be beneficial to the duties of the Receiver for the Receivership Estate.  The Receiver shall not be bound by any existing contract or agreement entered into by or on behalf of Owner or any prior property manager that the Receiver does not expressly assume in writing.  Freddie Mac shall be provided at least five business days' advance written notice prior to the Receiver's entering into any proposed Contract, or any proposed modification to an existing contract, under which the Receiver's obligation exceeds or reasonably could exceed Twenty-Five Thousand Dollars ($25,000), before it is executed.  Upon receipt of such notice, Freddie Mac shall have three business days to approve the proposed Contract, which notice shall specify the terms of the proposed contract, the fees and costs thereunder, and whether the fees and costs thereunder are consistent with the current Budget provided by the Receiver.  Proposed Contracts that exceed the $25,000 limit set forth in this Order shall not be valid, and shall be of no force and effect, unless and until Freddie Mac approves.

15.    Litigation.  The Receiver is authorized to initiate, defend, negotiate, settle, or otherwise dispose of any claim or litigation that concerns the Property, Owner or the Receivership Estate subject to Freddie Mac's approval to the extent such settlement shall affect Freddie Mac's security interests in the Property and all related Freddie Mac interests thereto.  The Owner and members of Owner shall have the right, at their expense, to defend and respond to any claims that may be asserted against or by the Owner or members of Owner, subject to the right of Receiver to control any litigation that concerns the Property or the Receivership Estate.  The Receiver and Owner shall reasonably cooperate with and make information available to each other in connection with any claims or litigation.

16.    Mortgages, Taxes, and Insurance.  The Receiver will ensure that all monthly mortgage payments, property taxes, and insurance premiums relating to the Property are timely paid subject to funds being available to pay such obligations.  Owner shall be responsible for the internal affairs of Owner and income and franchise tax filings for Owner and its members.  Notwithstanding the foregoing, the Receiver shall have the authority, but shall not be required, to authorize the preparation of any outstanding or pending tax return filings for the Owner, and to sign and file any such returns on the Owner's behalf in the event that the Owner has not adequately demonstrated to the Receiver, in the Receiver's sole determination, that Owner has taken or is taking necessary steps to timely file any such returns.  The Receiver shall be responsible for preparing and submitting audits and compliance filings for the operation of the Property as required by the Loan Documents and applicable law, including LIHTC Form 8823 and other compliance filings for the Property, including audits and compliance filings for time periods prior to the Commencement Date that are incomplete.  The Receiver and Owner shall reasonably

cooperate with and make information available to each other in connection with such reporting and filings.

17.     <u>Budget</u>.   Receiver shall within thirty (30) days after the Commencement Date prepare a budget for the operation of the Property ("Budget"), which shall be provided to Freddie Mac for approval.  Upon approval, it shall be filed with the Court in this action and delivered to counsel for the parties.  The Budget shall be updated by the Receiver on a monthly basis, and such updates shall be delivered to the parties.  Freddie Mac shall have a reasonable right of approval over the initial Budget and any material modifications that increase by more than 10% the costs under the Budget in any expense category or in overall costs under the Budget.  The Receiver may establish reasonable reserves for the Property ("Reserves") from Property Funds held by the Receiver.  In the event actual expenses in any category or in the overall Budget exceed the budgeted amount by more than 10%, the Receiver shall be required to obtain the consent of Freddie Mac to increase the budgeted amount for such expense category or for the overall Budget.  The Receiver shall be permitted to enter into Contracts consistent in scope and cost with the Budget, subject to Freddie Mac's rights set forth in this paragraph and Paragraph 14 above.  Notwithstanding the foregoing, if the Receiver, in the exercise of Receiver's prudent business judgment, determines that expenditures in excess of the amounts specified in the Budget must be made immediately for purposes of danger to resident life, health, or safety, the Receiver is authorized to do so and shall notify the parties within 24 hours of that determination.

18.     <u>Reporting by Receiver</u>.  The Receiver shall from time to time, but at least on a monthly basis, provide to the Court, Freddie Mac and to all counsel of record in this case a report of the Receivership Estate, including all receipts and expenditures of and by the

Receiver, the Receiver's activities at and in regard to the Property, and the condition of the Property (each a "Receiver Report.")  Each Receiver Report shall specify any Property Funds held by the Receiver as of the date of such Receiver Report in excess of expenses paid or incurred by the Receiver, and Reserves established by Receiver ("Excess Funds"). Upon termination of the Receivership, the Receiver shall within sixty (60) days thereafter deliver a final Receiver Report.

19.     <u>Receiver Turnover of Excess Funds to Lenders</u>.  On a monthly basis, any Excess Funds held by the Receiver, as specified in a Receiver Report, shall be paid first to Freddie Mac to reimburse any advances made by Freddie Mac, and then any balance shall be paid to the Servicer, to be applied to the Bond Loan and the Reimbursement Loan.  Upon termination of the Receivership or sale or foreclosure of the Property, any excess Property Funds held by the Receiver shall be turned over to the Servicer, or as directed by order of this Court.

20.     <u>Licenses and Permits</u>.  The Receiver is authorized to use any existing licenses, permits or registrations of Owner with respect to the Property, and to apply for and obtain any licenses or permits deemed necessary by the Receiver to operate the Property.  The Receiver may pay the costs and fees for any licenses or permits for the Property from Property Funds held by the Receiver.  The Receiver may take action to preserve, maintain, amend, modify, or cancel any license or permit in the discretion of the Receiver.

21.     <u>Insurance on Property</u>.  Within three business days following the Commencement Date, Owner shall provide the Receiver with copies of all existing Owner insurance policies for the Property, the assets of the Receivership Estate, or purchased by the Owner for or with respect to the Property.  The Receiver, the retained Property Manager, Servicer,

Freddie Mac, the Trustee, and, solely to the extent covered by policies in effect prior to the entry of this order, the Owner (including its members, and its managers, officers, directors and authorized representatives), shall each be named as an additional insured on all existing coverages, including property, general liability, and workers' compensation policies for the Property (collectively referred to as "Insurance on Property"). The premiums for insurance policies and deductibles for Insurance on Property that become due shall be Expenses of the Receivership Estate. The Receiver shall have the right to possess and control all right, title, and interest of Owner or the insured in and to all proceeds from any claims made or to be made under any insurance policy placed by Owner, the Receiver, or any other party with respect to the Property or the Receivership Estate. The Receiver shall have the right to renew, modify, amend, or replace any insurance policies or obtain additional insurance as the Receiver deems reasonably necessary to protect the Property as long as it does not impair or reduce coverage and parties covered by Insurance on Property existing as of the date of the entry of this order. No existing insurer may cancel its existing policy as a result of appointment of the Receiver without prior order of this Court. The Owner may not amend, modify, or cancel any existing insurance policy without the written consent of the Receiver.

22.     Receiver's Business Insurance. Separate from Insurance on Property as set forth in Paragraph 21 above, the Receiver shall, within ten (10) days after the Commencement Date, obtain and carry in full force and effect insurance coverages, including insurance for property loss, business interruption, general liability, excess/umbrella insurance, business liability, defamation, professional liability/errors and omissions, dishonesty, identity theft, fidelity, cyber (first party and third-party including identity theft resolution and loss control

services), automobile, and worker's compensation (collectively referred to as "Receiver's Business Insurance") for the Receiver's actions hereunder. Such insurance will have a minimum per claim coverage amount of $5 million. Limits of liability for the Receiver's Business Insurance are in addition to the insurance coverages required for the Property. To the extent the Receiver engages agents, attorneys, or contractors to provide services, those entities must also have appropriate coverages depending on the services being provided. For the avoidance of doubt, the Receiver and its employees, as well as any of the Receiver's agents, attorneys or contractors shall always keep in force the minimum of $5 million in liability coverage for their acts hereunder, including applicable tail coverage for the parties identified in this section.

23.     <u>Lender Exercise of Remedies</u>.  Each of Trustee or Freddie Mac shall be authorized at any time to exercise any and all remedies under the Loan Documents, including foreclosure, without requiring further consent from this Court. No existing lien, claim, or other security interest in the Property shall be affected by this Order, nor shall the appointment of the Receiver impair Trustee's or Freddie Mac's right or ability to proceed with any judicial or nonjudicial foreclosure of the Property now or in the future, with the express understanding that judicial or nonjudicial foreclosure of the Property may occur without further order of the Court. For the avoidance of doubt, the Receiver is not authorized to pursue any remedy under the Loan Documents nor is the Receiver's consent needed for any action to be taken by any Trustee or Freddie Mac under the Loan Documents.

24.     <u>Liability of Receiver</u>.  Any liability incurred by, or recourse against, the Receiver other than for gross negligence, willful misconduct, malfeasance, bad faith, reckless

disregard of duties, or actions in violation of orders of this Court, will be limited to, in order of priority, first to applicable insurance coverages inuring to the Property and to the Receiver (including its employees, agents, attorneys or contractors), and second to the Property Funds generated by the Property and received by the Receiver in the course of the Receivership.  Any claims or actions asserting liability against the Receiver, or the Receiver's agents, employees, Professionals, and contractors shall be brought by motion in this action.  For the avoidance of doubt, the Receiver, and the agents, employees, attorneys, and contractors of Receiver shall have personal liability for gross negligence, willful misconduct, malfeasance, bad faith, reckless disregard of duties, and actions in violation of this Court's orders.

25.    <u>Additional Powers of Receiver</u>.  Subject to Freddie Mac and FHFA's rights and powers under this Order and HERA, the Receiver is hereby vested with any and all authority necessary or appropriate, to carry out the intent and purpose of this Order, and to operate and maintain the Property and the Receivership Estate.

26.    <u>Bond of Receiver</u>.  The Receiver shall within ten (10) business days after entry of this Order file with the Clerk of this Court a bond of cash deposit in the penal amount of $10,000.00 on the Receiver's pledge in writing to discharge the duties as the Receiver in this action and to obey the orders of this Court ("Receiver Bond").  The cost of the Receiver Bond and any renewals or extensions thereof shall be an expense of the Receivership Estate paid from Property Funds.

27.    <u>Receiver Fee</u>.  The Receiver shall receive a monthly fee based on an hourly rate for time spent as Receiver ("Receiver Fee") for services rendered as Receiver as a necessary and reasonable expense of the Receivership.  The Receiver's hourly rate and the rates and

fees of any entities retained by the Receiver related to the Property must be reasonable and in accordance with industry standard and must be approved by Freddie Mac in advance of the payment of the Receiver's Fee.  The Receiver must prepare and provide to Freddie Mac and all other secured creditors a reasonably detailed invoice including all necessary back-up documenting the fee incurred each month.  Freddie Mac shall have 14 days after receipt of an invoice to review and approve such fees.  Once approved by Freddie Mac, such approved amount of the Receiver Fee may be deducted and paid by Receiver from Property Funds held by the Receiver.

28.     <u>Preservation of Freddie Mac's and Conservator's Rights</u>.  Notwithstanding any other term of this Order, Freddie Mac and FHFA, as Conservator of Freddie Mac, retain and may exercise without further Court approval any and all of their rights under the Loan Documents and HERA.  The Receiver's powers as set forth in this Order do not in any way diminish Freddie Mac's rights under the Loan Documents or FHFA's rights, powers, and functions as Freddie Mac's Conservator and successor under HERA.

29.     <u>Authority of Court</u>.  The Receivership shall continue in effect until terminated by further order of this Court.  This Court shall retain jurisdiction and supervision concerning the Receiver, the Receivership created by this Order, and the interpretation and implementation of this Order.

30.     <u>Amendment to June 30, 2023 Consent Order</u>.  This Amended Consent Order hereby amends and replaces that Consent Order entered by the Court on June 30, 2023.  ECF No. 21.

**SO ORDERED**.

ENTERED this 30th day of September, 2024.

_____
CARL J. NICHOLS
United States District Judge

Consented to on this 23rd day of September, 2024.

/s/ Joshua W. Cox_____
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
Stinson LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, D.C. 20006
Tel: (202) 728-9903
Fax: (202) 572-9943
brad.jones@stinson.com
joshua.cox@stinson.com
*Attorneys for Marc E. Albert, Receiver*

/s/ Cathy A. Hinger_____
Cathy A. Hinger, No. 473697
Jeffrey Tarkenton, No. 376493
Kathleen O. Gallagher, No. 1006302
Christos Christodoulou, No. 167131
Womble Bond Dickinson (US) LLP
2001 K Street NW, Suite 400 South
Washington, DC 20006
Tel: (202) 857-4489
Fax: (202) 261-0029
Email: cathy.hinger@wbd-us.com
Email: jeffrey.tarkenton@wbd-us.com
Email: katie.gallagher@wbd-us.com
Email: christos.christodoulou@wbd-us.com
*Counsel for Plaintiff Federal Home Loan
Mortgage Corporation*

Copies via eFileDC to:
Cathy A. Hinger (cathy.hinger@wbd-us.com)
Jeffrey A. Tarkenton (jeffrey.tarkenton@wbd-us.com)
Kathleen O. Gallagher (katie.gallagher@wbd-us.com)
Christos Christodoulou (christos.christodoulou@wbd-us.com)
Womble Bond Dickinson (US) LLP
2001 K Street, NW, Suite 400 South
Washington, DC 20006
*Counsel for Plaintiff*