## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION )<br><br>Plaintiff, )<br><br>v. )<br><br>MM PROPERTY LLC, *et al.* )<br><br>Defendants. ) | <br><br><br>Case No. 1:23-cv-1642 |

## THIRD-PARTY INTERVENOR TEMPO INC.'S MOTION TO LIFT STAY

Third-party Intervenor, Tempo Inc. ("Tempo") moves to lift the Court's stay entered on May 21, 2024 enjoining Tempo's mechanics' lien action in the Superior Court of the District of Columbia (*Tempo, Inc. v. MM Property, LLC,* No. 2023-CAB-4257 (D.C. Super. Ct.)).  For the foregoing reasons, the Court should grant this Motion.

## MEMORANDUM IN SUPPORT OF MOTION

### INTRODUCTION

For over two years, the institutional parties in this case have failed to make any meaningful progress to rehabilitate the Property.  The Receiver's limited progress is illustrated each month in his Status Reports, which often repeat the same statements verbatim each month to describe the perpetually stagnant situation.

The Receivership is driven by Freddie Mac, which is a government sponsored enterprise with a 2024 net revenue of $23.9 billion.[1]  While Freddie Mac and its near-infinite resources

---

[1] Freddie Mac c/o Federal Home Loan Mortgage Corporation, Form 10-K, Annual Report Pursuant to the Securities Exchange Act of 1934 for the Fiscal Year ended December 31, 2024 (*found at* https://www.freddiemac.com/investors/financials/pdf/10k_021325.pdf) (last accessed August 11, 2025).

contemplates the trajectory of the Property through the Receiver, Tempo's statutory entitlement to pursue recovery through a mechanics' lien has been foreclosed.

Comparatively, Tempo's gross revenue in 2024 was $6.7 million, and it reported a net operating loss for that same year.[2] Ex. A at 16. Tempo is a local painting business with a gross revenue that is a small fraction of a percent of Freddie Mac's net value. While a revenue comparison may not be dispositive, it illustrates the extreme inequities in this case.

Tempo performed construction work on the Property and was not paid at least $520,403.49, which represents almost 10% of Tempo's annual gross revenue depending on the year. *See* Ex. A. The Receiver and Freddie Mac are continuing to benefit from Tempo's work while they manage the Property. Ordinarily, District of Columbia statute entitles an unpaid construction laborer to perfect and enforce a mechanics' lien on the building to leverage payment. Indeed, this entitlement goes beyond foreclosing the home and collecting the proceeds. In D.C., to the extent a mechanics' lien is not satisfied by foreclosure proceeds, the lienor may recover directly against the property owner. *See* D.C. Code § 40-303.20.

While Tempo's lien may not have priority, a judgment in the lien proceeding may allow Tempo to pursue post-judgment discovery against MM Property and its members to the extent Tempo does not recover from foreclosure proceedings. It is possible that post-judgment discovery leads to evidence that supports piercing the corporate veil, *alter ego* liability, or other claims such as fraudulent conveyance. Tempo cannot pursue these inquiries in the presence of the Court's stay.

In support of the stay, the Receiver represented to the Court that it "is merely seeking a **temporary** pause in the Tempo Litigation to provide space so the Property may be rehabilitated

---

[2] Tempo's 2020 through 2024 annual Profit and Loss statements are attached as **Exhibit A.**

and the Receivership assets preserved."  Receiver's Reply to Tempo Inc.'s Motion to Intervene and Opposition to Receiver's Stay Motion ("Receiver's Reply"), Dkt. 64 at 8 (March 14, 2024) (emphasis added).  Moreover, the Court's Order imposing the stay references its temporary nature.  Order at 4 (May 21, 2024).  Black's Law Dictionary defines temporary as "that which is to last for a limited time only…"  Black's Law Dictionary (2nd ed. 2025) (*found at* thelawdictionary.org) (*last accessed* August 19, 2025).

However, more than a year after the stay, and more than two years into the Receivership, the Property has not substantively improved.  The Receiver has provided nothing to the Court to indicate that rehabilitation will occur in the near term to satisfy the temporary nature of the stay.  For nearly a year and a half, the Receiver has relied on identical language to justify the stay: "Given the current projected operational levels, the injunction provided for in the Tempo Stay Order is still needed at this time."  *See* Receiver's Status Report, Dks. 76, 82, 85, 87-94, 97, 100-101 (Aug. 2024 through September 2025).  This cannot be enough to justify the hardships imposed on Tempo throughout the duration of this process.

Tempo is a local small business that wants nothing more than to desperately move on and attempt to recover something from the labor and materials its workers poured into the Property. The stay has compelled Tempo to sit idle for over sixteen months and watch the Receiver regurgitate the same Status Updates month after month and with little progress to show.

Tempo recorded its Notice of Mechanics' Lien in D.C. land records over two years ago on March 22, 2023 (which was before the Court's June 29, 2023 Consent Order to establish the Receiver).  Further delaying Tempo's ability to litigate this matter in Superior Court is fundamentally unfair, inequitable, and against the principles of D.C. statute.

"As has often been observed, justice delayed is justice denied." *American Coastal Line Joint Venture, Inc. v. U.S. Lines, Inc.,* 580 F. Supp. 932, 937 at n.4 (D.D.C. 1983). Accordingly, the Court should lift the stay and allow Tempo to proceed with its claims in Superior Court.

## ARGUMENT

I.    **Standard.**

Generally, this Court handles receiverships with care. "The appointment of a receiver is not a matter of right. It is an **extraordinary** equitable remedy and should be granted with caution." *New York Community Bank v. Sherman Ave. Associates LLC,* 786 F. Supp.2d 171, 174-5 (D.D.C. 2011) (emphasis added).

When evaluating a motion to lift a receivership stay, District Courts will review four factors: "(1) comparing the interests of the receiver and the moving party by, (2) determining whether continuance of the stay will preserve the *status quo,* or whether the moving party will suffer substantial injury if not permitted to proceed, (3) examining the merit of the moving party's underlying claim, and (4) assessing the time in the receivership's life at which the motion to lift the stay is made." *U.S. v. ESIC Capital, Inc.,* 685 F. Supp. 483, 485 (D. Md. 1988) (*citing S.E.C. v. Universal Financial,* 760 F.2d 1034, 1038 (9th Cir. 1985), *S.E.C. v. Wencke,* 742 F.2d 1230, 1231 (9th Cir. 1984), and *Superior Motels v. Gould,* 622 F.2d 1363, 1373 (9th Cir. 1980)) (*cited by BMO Harris Bank, N.A. v. Truland Systems Corporation,* Case No. 1:14CV1187, 2017 WL1511869 at *2 (E.D. Va. April 27, 2017)).

> The third circuit recognizes that a receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant, **yet this latitude must be balanced by an appropriate escape valve, which allows potential litigants to petition the court for permission to sue… so that litigants are not denied a day in court during a lengthy stay.**

*U.S. Small Business Admin. v. Smith, Stratton, Wise, Heher, & Brennan, LLP,* Case No. Civ.A. 05-190, 2006 WL237511 at *7 (E.D. Pa. Jan. 31, 2006) (citations omitted) (emphasis added).

District Courts have found that a two-year receivership is ripe for evaluation of the receiver's progress towards effectuating or accomplishing its duties. *United States Securities and Exchange Commission v. Ahmed,* Case No. 3:15cv675, 2021 WL8316089 at 3 (D. Conn. April 22, 2021) ("Courts are more likely to grant a lift in a litigation stay after the receiver has had sufficient time to conduct its duties. […] [T]he Receivership has been in place for over two years, which has afforded the Receiver adequate time to organize the entities under his control…"). *See also S.E.C. v. Provident Royalties, L.L.C.,* Case No. 3:09-CV-1238-L, 2011 WL2678840 (N.D. Tex. July 7, 2011) (timing factor weighed in favor of lifting stay where receivership was almost two years old).

When evaluating the movant's underlying claim, District Courts need only determine whether the movant's claim is *colorable* under applicable law. *U.S. v. Acorn Technology Fund, L.P.,* 429 F.3d 438, 444 (3rd Cir. 2005) ("[W]hen it is asked to lift a stay, it would usually be improper for a district court to attempt to actually judge the merits of the moving party's claims at such an early point in the proceedings. A district court need only determine whether the party has *colorable* claims to assert which justify lifting the receivership stay…").

## II.    Tempo has suffered and will continue to suffer substantial injury if not permitted to proceed.

Tempo entered contract with MM Property LLC ("MM Property") on November 7, 2022 ("Contract") whereby Tempo was to provide management, materials, and labor for the following construction services on the Property: carpentry, drywall, flooring, painting, cabinet repair, light electrical, HVAC filter replacement, brick pointing, caulking, gutter and downspout repair, lock

replacement, and minor plumbing.  Ex. B.  A copy of the Contract is attached as **Exhibit B**.

Tempo employed a staff of 20 to perform work on this Contract.

The Contract was an adjustable-price arrangement where Tempo would invoice MM

Property bi-weekly for services in an amount not to exceed $50,000 per invoice, unless agreed

upon by the parties.  Ex. B.  Tempo was retained to correct and repair deficiencies identified

from series of safety inspections that had plagued the Property for the preceding year.  *Id.*  ("The

scope of this contract is for the completion of the outstanding items on 3 inspection lists, one

conducted on 12/14/21, one on 6/6/22, and one on 7/10/22.")

Tempo commenced work in or around November 17, 2022.  Ex. C.  A copy of the

project's billing and accounting records is attached as **Exhibit C**.  MM Property paid Tempo in

the amount of $268,033.61 for work performed between November 17, 2022 and December 14,

2022.  Ex. C at 1.  Tempo continued performance between December 14, 2022 through on or

around March 13, 2023.  *Id.*  During this period, Tempo submitted 15 additional bi-weekly

invoices, totaling $520,403.39.  MM Property never paid Tempo this amount, which is the basis

for Tempo's mechanics' lien action in Superior Court.

In 2022, Tempo reported a net operating loss of -$79,727.34.  Ex. A at 11.  Similarly,

Tempo reported a net operating loss of -$82,270.73 in 2023 (Ex. A at 15), and a net operating

loss of -$2,144.23 in 2024 (Ex. A at 19).  Tempo's operating margins are thin, and the loss of

over half a million in revenue substantially impacts the company.  The continued losses on this

project caused Tempo to obtain hardship status from the Small Business Administration ("SBA")

on July 25, 2024 to reduce payments on an SBA loan Tempo previously obtained with a

principal balance of $1,750,300.  Ex. D.  A copy of the SBA's July 25, 2024 approval of

Tempo's hardship status is attached as **Exhibit D**.



**U.S. SMALL BUSINESS ADMINISTRATION**
**Covid EIDL Servicing Center**
**14925 Kingsport Road**
**Fort Worth, Texas 76155**

(833) 853-5638
For Relay
Service Dial
7-1-1

July 25, 2024
TEMPO INC
2561 HOUSLEY RD
ANNAPOLIS, MD 21401

Re:  Loan No. DL(H) 7765288008

Dear Borrower(s):

Due to your financial difficulty, the Small Business Administration consents to the following action taken on your loan:

1.  Change installment amount from  $8,797.00 to $880.00 monthly, including principal and interest, beginning with the installment due 9/2/2024  through and including 2/2/2025.

Your next payment will be due 9/2/2024 in the amount of $880.00.

In the event that you fail to make the reduced payments as herein above described, this letter of consent and approval to reduce payments will immediately and automatically become null and void and the amount of the monthly payment will revert to that which is scheduled on the Note.

Your regular installment amount will return to $8,797.00 on 3/2/2025.

If you have any additional questions about this action, please contact our office at the above address or toll-free number.

Sincerely,

Loan Servicing

*Id.*  Tempo's hardship status initially expired on September 2, 2024.  *Id.*  On February 7, 2025, the SBA continued Tempo's hardship status through August 2, 2025.  Ex. E.  A copy of the SBA's February 7, 2025 continuance of Tempo's hardship status is attached as **Exhibit E**.  On July 15, 2025, Tempo applied to continue its hardship status again, however the SBA has not yet responded to the request.  Accordingly, Tempo's hardship status was terminated, and the full monthly premium for the loan was due to the SBA starting September 2, 2025.  Ex. F.  A copy of Tempo's September 2, 2025 loan statement is attached as **Exhibit F**.

Losing the SBA hardship status, coupled with consecutive annual net operating losses, jeopardizes Tempo's ability to exist as a company.  The Court's stay has precluded Tempo's ability to recover revenue earned on the MM Property project.  The amounts owed are necessary and essential for Tempo to continue operations, including loan repayment obligations.  Tempo has been in business for more than 30 years.  It is a small, local construction company that focuses predominantly on painting services.  The costs, fees, and delays relating to this case, in addition to the unpaid revenue from the Project, threaten to put Tempo out of business.

Comparatively, this case has virtually no impact on Feddie Mac as an institution, and indeed Freddie Mac has been subject to billions in federal bailout subsidies dating back to 2008. *See* Treasury Department and FHFA Amend Terms of Preferred Stock Purchase Agreements for Fannie Mae and Freddie Mac, U.S. Treasury Department Press Release, January 14, 2021 (*found at* https://home.treasury.gov/news/press-releases/sm1236) (identifying $191.5 billion in combined Freddie Mac and Fannie Mae draws from the U.S. treasury between September 7, 2008 through Jan. 14, 2021).

Freddie Mac's core mission is to "support the U.S. housing finance system and help ensure a reliable and affordable supply of mortgage funds across the county."  Freddie Mac, About Us (*found at* https://www.freddiemac.com/about) (*last accessed* Aug. 12, 2025).  Displacing small painting companies that seek payment for services performed is not core to Freddie Mac's public mission.

Tempo performed work on the Property and deserves to be paid.  The revenue owed on this Project is necessary to sustain Tempo's business.  The Court's stay removes a statutory entitlement that would otherwise be afforded to Tempo.  The delays resulting from the stay

substantially and disproportionately harm Tempo.  The Court should grant this Motion because

Tempo has been and will continue to be severely damaged by the stay.

III.    **Tempo's mechanics' lien claim has merit, and District of Columbia statute imposes liability onto the Property owner to the extent that proceeds from the sale of the Property are insufficient to satisfy the mechanics' lien.**

On March 22, 2023, Tempo perfected its mechanics' lien claim by recording its verified

Notice of Mechanics' Lien in District of Columbia land records in accordance with D.C. statute.

Ex. G.  A copy of Tempo's Notice of Mechanics' Lien is attached as **Exhibit G**.  Tempo's *prima*

*facie* case is colorable and has merit because (i) Tempo performed the construction work

pursuant to the Contract (Ex. B), (ii) Tempo was not paid (Ex. C), and (iii) Tempo timely

perfected its verified claim in accordance with D.C. law (Ex. G).  *See* D.C. Code § 40-301.01, *et*

*seq.*

In the District of Columbia, foreclosing a property is not the only means by which an

unpaid laborer can recover amounts owed in a mechanics' lien action.  If the proceeds from

foreclosure are insufficient to satisfy the lien amount, then "a personal judgment for the

deficiency may be given in favor of the lien or against the owner of the premises… for the labor

or materials furnished by him…"  D.C. Code § 40-303.20.  Thus, it is irrelevant whether Tempo

recovers any proceeds from foreclosure because Tempo may pursue recovery against MM

Property for any outstanding amounts to the extent Tempo prevails in the action.

Neither Freddie Mac nor the Receiver have any basis to dispute Tempo's *prima facie*

case.  Instead, in their prior briefs, Freddie Mac and the Receiver attack Tempo's ability to

collect any proceeds from foreclosure.  Freddie Mac and the Receiver argue that Tempo's

mechanics' lien falls behind preceding secured interests against the Property, which collectively

"dwarf" Tempo's claim in terms of amount and would result in "no funds available toward

payment of [Tempo's] alleged debt." *See* Plaintiff Federal Home Loan Mortgage Corporation's Reply to Tempo Inc.'s Motion to Intervene and Their Opposition to Receiver's Stay Motion ("Freddie Mac's Reply"), Dkt. 68 at 3 (March 28, 2024) and Receiver's Reply, Dkt. 64 at 7 (March 14, 2024).

Additionally, Freddie Mac argues that federal statute prohibits the foreclosure of the Property without consent from the Federal Housing Finance Agency pursuant to 12 U.S.C. § 4617(j)(3), referred to by Freddie Mac as the "Federal Foreclosure Bar." *See* Freddie Mac's Reply, Dkt. 68 at 3 (March 28, 2024).

These arguments fall short because District of Columbia statute authorizes Tempo to pursue collection against MM Property to the extent that foreclosure is insufficient. Moreover, issues relating judgment collection have nothing to do with the merits of Tempo's *prima facie* case and whether Tempo's claim is colorable under the law. When reviewing a motion to lift a receiver stay, the Court need only determine whether Tempo's action is colorable under applicable law. *See Acorn Technology Fund, L.P.,* 429 F.3d at 444 (3rd Cir. 2005).

D.C. Super. Ct. Rs. Civ. P. 69 and 69-I authorize post-judgment discovery to aid a judgment-creditor's collection. It is possible that post-judgment discovery leads to supplemental claims relating to *alter ego* liability, fraudulent conveyance, or the ability to pierce the veil of MM Property. The presence of the stay, however, precludes these remedies, all of which are afforded by District of Columbia rules and statute to protect an unpaid construction laborer.

Tempo's mechanics' lien claims are colorable and have merit, and the Court should lift the stay.

**IV.     The Receiver has failed to make any substantive progress to rehabilitate the Property.**

On June 29, 2023, the Court issued its Consent Order to establish the Receiver's control over the Property.  Since August 2023, the Receiver has filed at least 20 Status Reports with this Court that reveal limited advancement towards rehabilitating the Property.  Each Status Report illustrates high vacancy rates, damaged and unused "down units," and slow or inconsistent new tenant move-ins.

Over the course of the two-year Receivership, Property vacancy has only declined by 1.1%, from 28% vacancy on August 8, 2023 to 26.9% vacancy on September 30, 2025.  *See* Receiver's Status Report, Dkt. 26 at 4-5 (August 8, 2023), and Receiver's Status Report, Dkt. 101 at 5-6 (September 30, 2025).  The vacancy rate has not seen a consistent decline, as Property vacancy was up to 37% in April 2024 and 36% in May 2024.  *See* Receiver's Status Report, Exhibit A, Dkt. 69-1 at 2 (April 30, 2024), and Receiver's Status Report, Exhibit A, Dkt. 71-1 at 2 (May 30, 2024).

For over a year, the Receiver has made no progress relating to repairing so-called "down units," which are defined as units "that are presently gutted and will require significant rehabilitation time and cost to be brought back online for tenant use."  *See* Receiver's Status Report, Dkt. 72 at 9 (June 28, 2024) (defining down units).  Between June 2024 and September 2025, the Receiver identified the presence of 7 down units at the Property each month.  *See* Receiver's Status Report, Dkts. 72-73, 76, 82, 85, 87-94, 97, and 100-101 (June 28, 2024 through September 30, 2025).  At no point has the Receiver implemented a plan to rehabilitate these units.

Many rehabilitation delays cannot be controlled or influenced by the Receiver.  For example, many of the Property tenants utilize housing assistance payments ("HAP") through the

form of vouchers provided by the D.C. Housing Authority or other non-profit housing organizations.  *See* Receiver's Status Report, Dkt. 28 at 5 (Sept. 11, 2023) ("[T]he majority of rental income from the Property is derived from various types of housing assistance payments, including housing voucher payments…").  On average, the Receiver reports that it takes at least two full months for a would-be tenant to receive approval to move into the Property:

> The HAP voucher approval process, including unit inspection, takes approximately eight weeks for the tenant to be approved to move into the Property.  Following that approval, there may be further delay before the tenant is able to fully move in to the Property due to the tenant needing to provide proper notice to his or her current landlord of their intention to move out of their leased premises.

*See* Receiver's Status Report, Dkt. 72 at 9-10 (June 28, 2024).  The Receiver describes this process as slow: "the administrative processes in the District surrounding both approval of move-ins for tenant's receiving housing aid, as well as the rental assistance and eviction processes for current non-paying tenants are moving slowly."  *See* Receiver's Status Report, Dkt. 82 at 2 (Sept. 30, 2024).  The Receiver cannot correct or resolve these issues.

Under these circumstances, there cannot be any expectation that the Receiver will successfully rehabilitate the Property.  The facts presented cannot justify the inequities and harms imposed on Tempo through the continued stay of its mechanics' lien proceeding.  After two full years, the Property remains financially delinquent, and the Receiver does not point to any viable near-term solutions to reverse course: "[T]he Receivership is only able to operate through (1) deferring the Property's secured debt payments, and (2) use of the various reserve funds and cash advances from Freddie Mac…"  *See* Receiver's Status Update, Dkt. 97 at 5 (July 31, 2025), Dkt. 100 at 5 (August 29, 2025), and Dkt. 101 at 5 (September 30, 2025).

The Receiver has failed to rehabilitate the Property, and nothing indicates that the Property's financial status will materially change in the near term.  Many of the core issues that

prevent progress are out of the Receiver's control given the heavily regulated nature of the Property's tenants.  Meanwhile, Tempo continues to be harmed with every passing day while the stay remains in place.  In addition to lost revenue, Tempo continues to incur costs and expenses to pursue recovery.  Such costs are amplified by the presence of this case and the Court's stay.

"The theory underlying [District of Columbia's mechanics lien] statute is that a party who contributes labor and materials which enhance the value of the property **should be entitled to a preferred claim upon the property to the extent of his contribution**."  *Moore v. Axelrod,* 443 A.2d 40, 43 (D.C. 1982).  Here, the equities among the parties are imbalanced, and any continuance of the stay disproportionately harms Tempo and damages the nature and purpose of District of Columbia mechanics' lien statute.

## V.    Conclusion.

For the foregoing reasons, the Court should grant this Motion.

Dated:  October 13, 2025                    Respectfully submitted,

                                            ___*/s/ Clark Fonda*_____
                                            R. Clark Fonda, Jr. (D.C. Bar No. 1779627)
                                            Werther & Mills, LLC
                                            2000 Tower Oaks Blvd., Suite 200
                                            Rockville, MD 20852
                                            Tel:  202-503-9276
                                            clark@werthermills.com

                                            *Counsel for Tempo Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2025, a copy of the foregoing was filed with the

Court via the CM/ECF System, which will serve all counsel of record.

   /s/ Clark Fonda
   R. Clark Fonda, Jr.

**CERTIFICATE OF CONFERRAL**

I hereby certify that, on September 2, 2025, counsel for Tempo emailed counsel of record

to confer on the relief sought in this Motion pursuant to LCvR 7(m).  Counsel for the Receiver

indicated that the Receiver opposes the relief sought in this Motion.

   /s/ Clark Fonda
   R. Clark Fonda, Jr.